Jane Heslinga COOK,
Plaintiff-Appellant,

v.

G.D. SEARLE & CO., INC., Defendant;

Dr. Brian Donaldson, Dr. David E. Bates, Defendants-Appellees.

No. 82–2021.

United States Court of Appeals,
Tenth Circuit.

April 15, 1985.

Garold F. Heslinga and Charles Helsten, Oskaloosa, Iowa, and Scott R. Larson, Denver, Colo., for plaintiff-appellant.

Duncan W. Cameron of Hall & Evans, Denver, Colo., for defendants-appellees.

Before HOLLOWAY, Chief Judge, McWILLIAMS and BARRETT, Circuit Judges.

HOLLOWAY, Chief Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

Plaintiff, a resident of Iowa, commenced a diversity action in the District of Colorado, suing in tort for injuries allegedly caused by an intra-uterine device (IUD) manufactured by defendant, G.D. Searle & Co., Inc. In this suit she asserted a malpractice claim against the defendants-appellees, Dr. Bates and Dr. Donaldson. The district court granted the defendant doctors' motion for summary judgment and dismissed the action as to them as timebarred. Plaintiff appeals. We affirm.

## I

Plaintiff's complaint in the instant Colorado suit alleged that the IUD was prescribed for her by defendant doctors of a medical group at Greeley, Colorado, on November 4, 1974. Plaintiff's brief on appeal states that the device was inserted on November 4, 1974. Appellant's Brief and Ar-

gument 3. She averred that she became extremely ill on or about August 26, 1976, and that another physician diagnosed a massive infection of the uterus and performed a hysterectomy to save her life. I R. 1–3. In its order of April 13, 1982, granting summary judgment as to the doctors, the district court found that "[o]n August 23, 1976, [plaintiff's] physicians diagnosed an infection of the uterus and told her that they thought the infection was caused by the IUD. On August 26, 1976, her physicians performed a hysterectomy." I R. 79. In her deposition taken on March 11, 1982, plaintiff affirmed that prior to the August 26, 1976 hysterectomy, Dr. Lemon or Dr. Campbell had indicated to her that they thought the infection was caused by the IUD; that this statement was made by him to her on August 23, 1976; and that she knew he was referring to the Searle IUD inserted by Dr. Donaldson. I R. 98–99.

Plaintiff first brought suit on January 20, 1978 against the IUD manufacturer and the defendant doctors in the United States District Court for the Southern District of Iowa. I R. 63. The doctors filed motions to dismiss for lack of in personam jurisdiction in the Iowa forum. I R. 20. While these motions were pending, plaintiff filed on August 28, 1978 a second identical case in the District of Colorado against all defendants named in the Iowa suit. I R. 23, 60. On September 13, 1979, the doctors' motions to dismiss were granted in Iowa. 475 F.Supp. 1166 (S.D.Iowa). The case was transferred from Iowa to the Colorado federal court as to the remaining defendant on July 3, 1980.

On March 10, 1982, the defendant doctors filed a motion for summary judgment in Colorado, asserting the statute of limitations. The district court granted the motion, holding that the action was timebarred as to them under the Colorado statute of limitations in effect in August 1976.[1]

---

1. *See* Act of May 27, 1976, ch. 90, § 1, 1976 Colo.Sess.Laws 527. Although we conclude that the district court correctly applied a two year discovery provision to dismiss the action as time-barred, we must agree with defendants-appellees that the statute of limitations as amended in 1977 is to be applied here. *See Licano v. Krausnick,* 663 P.2d 1066 (Colo.App.1983). The

I R. 80. The court also concluded that Colorado's savings statute,[2] Colo.Rev.Stat. § 13–80–128 (1973), did not apply since the new action in Colorado was not brought within one year after the termination of the original Iowa suit as required by the savings statute. I R. 80–81. The court reasoned that since the plaintiff commenced her second action *before* the Iowa suit was dismissed as to defendant doctors, she could not utilize the extension in time offered by the statute. I R. 81. Thus the district court held that the action was time-barred as to the defendant doctors.

## II

Plaintiff contends on appeal that the action commenced in the United States District Court for the Southern District of Iowa was filed within the allowable time under the statutes of limitations for both Colorado and Iowa. *See* Appellant's Brief

and Argument 5. She argues, *inter alia*,[3] that this timely filing of the Iowa suit, later transferred to Colorado, tolled the running of Colorado's statute of limitations and that the action was thus not time-barred as to defendant doctors in the Colorado forum, relying on *Atkins v. Schmutz Manufacturing Co.*, 435 F.2d 527 (4th Cir.1970) (en banc), *cert. denied*, 402 U.S. 932, 91 S.Ct. 1526, 28 L.Ed.2d 867 (1971), and similar cases. *Id.* at 15.

■ At the outset, we note that *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), requires us to apply Colorado's statute of limitations in this diversity case. Moreover, the state's tolling rules, as "an integral part of the several policies served by the statute of limitations," are generally to be applied as well. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751, 100 S.Ct. 1978,

---

1977 statute provides in pertinent part as follows:

**13–80–105. Actions barred in two years.** No person shall be permitted to maintain an action, whether such action sounds in tort or contract, to recover damages from ... any person licensed in this state or any other state to practice medicine ... or other healing arts on account of the alleged negligence, breach of contract, or lack of informed consent of such person in the practice of the profession for which he is licensed or on account of his failure to possess or exercise that degree of skill which he actually or impliedly represented, promised, or agreed that he did possess and would exercise, unless such action is instituted within two years after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the injury. In no event may such action be instituted more than three years after the act or omission which gave rise thereto.

Act of June 12, 1977, ch. 198, § 1, 1977 Colo. Sess.Laws 816.

On this appeal, the defendants-appellees argue that in any event the absolute three year bar appearing in the last sentence of the above statute bars the prosecution of the instant case. That statute was effective on July 1, 1977. It nevertheless does apply to causes of action existing at that time under the *Licano* case, subject to the proviso that causes of action existing on the July 1, 1977 effective date of the statute were not barred until one year after that effective date or the expiration of the period of

limitations, whichever was longer. Under this limitations provision the Colorado action instituted on August 28, 1978 would seem untimely as the defendants-appellees contend. However, reliance on that bar does not dispose of the major contention of the plaintiff-appellant on appeal, namely, that the institution on January 20, 1978 of her Iowa suit tolled the statute of limitations for the Colorado suit for reasons we discuss in Part II, *infra*. We must, therefore, deal with those contentions of tolling below.

**2.** Colorado's savings statute provides in part as follows:

(1) If an action is commenced within the period allowed by this article and is terminated because of lack of jurisdiction or improper venue, the plaintiff ... may commence a new action upon the same cause of action within one year after the termination of the original action or within the period otherwise allowed by this article, whichever is later, and the defendant may interpose any defense or counterclaim which might have been interposed in the original action.

Colo.Rev.Stat. § 13–80–128 (1973).

**3.** Plaintiff also argued below in reply to defendants' motion for summary judgment that defendants were estopped from raising the statute of limitations as a defense. I R. 58. This issue is not raised on appeal. The Colorado savings statute was also relied on below, but is not argued on appeal by plaintiff.

1985, 64 L.Ed.2d 659 (1980).[4]  The Supreme Court has explained that:

> "[a]ny period of limitation ... is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action.  Although any statute of limitations is necessarily arbitrary, the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones.  In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival and questions of application."

*Board of Regents of the University of New York v. Tomanio,* 446 U.S. 478, 485–86, 100 S.Ct. 1790, 1795–96, 64 L.Ed.2d 440 (1980) (quoting *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1721–22, 44 L.Ed.2d 295 (1975)).  The state tolling rule therefore will generally govern in diversity actions absent a direct conflict between a state rule and an overriding federal rule[5] or affirmative countervailing federal considerations.[6]

▪ Plaintiff argues, however, that under *Atkins v. Schmutz Manufacturing Co.,* 435 F.2d 527 (4th Cir.1970) (en banc), *cert. denied,* 402 U.S. 932, 91 S.Ct. 1526, 28 L.Ed.2d 867 (1971), countervailing federal considerations do exist requiring application of the federal tolling rule.[7]  She points to the reasoning in *Atkins* that the federal court system is a unitary, cohesive system; that the federal interests in the effective functioning of the system call for choosing federal law over state law on the procedural problem involved here; that the bringing of a second suit achieved the same result as a transfer of the first suit; and that upon the filing of the first suit, which served the purposes of the statute of limitations, the Colorado limitation should be held tolled in this federal case.  Appellant's Brief and Argument 11–14.

In *Atkins,* the plaintiff was injured in Virginia by a machine manufactured by defendant, a Kentucky corporation having its sole place of business in that state.  At that time, Virginia did not have a long-arm

---

4.  *See, e.g., Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980) (state law governs in diversity case for determining when an action is deemed to have been "commenced" for statute of limitations purposes); *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949) (state "service of process" rules govern in diversity case for purposes of determining when the statute of limitations is tolled); *see also Board of Regents of the University of New York v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (federal courts are obligated to apply both the state's statute of limitations and tolling rules in most 42 U.S.C. § 1983 actions); *Vest v. Bossard,* 700 F.2d 600, 607 (10th Cir.1983) (state tolling rules apply in 42 U.S.C. § 1983 action); Note, *Erie Doctrine—Tolling Effect on Statute of Limitations of Prior Pending Suit is a Question of Federal Law,* 50 Tex.L.Rev. 162, 166 (1971) ("[c]ommon sense seems to dictate, and several cases have held, that adoption of state limitations includes adoption of that state's incidental rules of ... tolling").  *But cf. Ohio v. Peterson, Lowry, Rall, Barber & Ross,* 651 F.2d 687, 691–92 (10th Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981) (federal tolling rules apply in fraud cases under the Securities Exchange Act of 1934 where federal court applies state limitation in absence of federal limitation).

5.  *Walker v. Armco Steel Corp.,* 446 U.S. 740, 749–50, 100 S.Ct. 1978, 1984–85, 64 L.Ed.2d 659 (1980) (recognizing that under *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the federal rule of procedure will govern when it directly conflicts with a state rule).

6.  *Byrd v. Blue Ridge Rural Electric Cooperative,* 356 U.S. 525, 537–38, 78 S.Ct. 893, 900–01, 2 L.Ed.2d 953 (1958).

7.  Plaintiff also argues that, by analogy to cases interpreting the federal transfer provision, 28 U.S.C. § 1406(a), we should not permit this action to be barred by Colorado's statute of limitations.  She says that under the transfer provisions, a federal district court would allow the plaintiff to transfer her case to another federal district court rather than dismiss for lack of jurisdiction; in addition, after transfer the federal court receiving the case would consider the transferee state's statute of limitations tolled by the filing of the original action in the transferor state's court.  *See* Appellant's Brief and Argument 5–11.

statute under which personal jurisdiction over the defendant could be obtained. Consequently, plaintiff filed suit in federal court in Kentucky. Although the one-year Kentucky statute of limitations had expired, all parties in the case proceeded on the assumption that, because the cause of action arose in Virginia, its two-year limitation period applied. That assumption was upset, however, when the Kentucky Court of Appeals changed the law and held that Kentucky's shorter statute of limitations was controlling in such circumstances. Meanwhile, Virginia had enacted a long-arm statute under which personal jurisdiction could be obtained over the defendant. Therefore, before the case was dismissed as time-barred by the Kentucky court, plaintiff filed his action in the Western District of Virginia.

The federal district court in Virginia dismissed on the ground that Virginia's two-year limitation had run before the Virginia suit was filed and that the limitation period was untolled by the proceedings in the federal court in Kentucky. 435 F.2d at 528–29. The Fourth Circuit reversed, stating:

> That there is a significant federal concern for the application of rules of litigation in federal courts which are consistent with the fundamental nature of that court system is well established. *See, e.g., Byrd v. Blue Ridge Cooperative, supra; Herron v. Southern Pacific Co.,* 283 U.S. 91, 94, 51 S.Ct. 383, [384] 75 L.Ed. 857 [1931].

> Insofar as federal concerns are involved, this action is, in effect, merely a continuation of the proceedings commenced in the Western District of Kentucky. This is clear from the unitary nature of the federal court system and the procedures it embodies for the expeditious adjudication of cases on their merits.

> . . . .

> Though here there was no transfer of the action in the Western District of Kentucky and the question of its transferability was not raised, the commencement of this action in the Western District of Virginia during the pendency of the Kentucky action has achieved the same practical result. A determination of the tolling effect of the commencement and prosecution of the federal action in the Western District of Kentucky ought to be had under the same body of law regardless of the procedural means by which prosecution of the substantive cause of action is discontinued in the district court sitting in Kentucky and continued in a district court sitting in Virginia. (Footnote omitted).

*Id.* at 537–38.

Appellees' answer brief does not address *Atkins* or its rationale. Defendants do argue that transfer cases relied on by plaintiff, *e.g., Mayo Clinic v. Kaiser,* 383 F.2d 653 (8th Cir.1967), and *Smith v. Peters,* 482 F.2d 799 (6th Cir.1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1587, 39 L.Ed.2d 886 (1974), are not persuasive because there was no actual transfer here, merely a dismissal as to the defendant doctors, and we accept that point, so far as it goes. The argument does not, however, face up to the *Atkins* reasoning that the institution of a second suit, as was done here, "achieved the same practical result" as a transfer and that federal concerns should lead to a conclusion of tolling. 435 F.2d at 537.

We are, nevertheless, not convinced that we should follow *Atkins* here. *Walker v. Armco Steel Corp., supra,* teaches that in diversity cases, questions as to whether a tolling occurs of a state limitation should generally be decided by state law and state procedural rules where the state rule involved "is an integral part of the several policies served by the [state] statute of limitations." 446 U.S. at 751, 100 S.Ct. at 1985. In *King v. W.R. Hall Transportation & Storage Co.,* 641 P.2d 916, 920 (Colo.1982), the Colorado Supreme Court held that the dropping of parties improperly joined was tantamount to a dismissal in a mechanics lien case; and that when a statute of limitations does not specifically allow for tolling during the pendency of a prior action, a party cannot deduct from the applicable limitations period the time

consumed by the pendency of an action in which he sought to have the matter adjudicated, but which was dismissed without prejudice as to him. *See also Commercial Equity Corp. v. Majestic Savings & Loan Ass'n*, 620 P.2d 56, 58 (Colo.App.1980) (in damage action, statute of limitations was not tolled by prior suit for injunctive relief and damages which was dismissed without prejudice as to plaintiffs). These pronouncements of Colorado law indicate a policy disfavoring tolling by mere pendency of a prior action, absent a statutory provision providing for such tolling. We find no such statutory exception here and none is brought to our attention. We thus conclude that there is a general state policy against allowing tolling in such circumstances and that this state policy is an "integral part of the several policies served by the statute of limitations." *Walker*, 446 U.S. at 751, 100 S.Ct. at 1985.

Furthermore, we feel that the state policy is not in conflict with an overriding federal rule or countervailing federal considerations here; we are not persuaded that equating the filing of a second suit here with a transfer is necessary to vindicate any federal concern. The reasoning

for applying a federal rule of law in an actual transfer case is persuasive—namely that the flexible transfer procedure be used and the commencement of an action in the transferor court be held to toll the statute of limitations to avoid the injustice of the bar of limitations otherwise being applied to defeat a hearing on the merits. *See, e.g., Mayo Clinic v. Kaiser*, 383 F.2d at 656; *Dubin v. United States*, 380 F.2d 813, 814–15 (5th Cir.1967). Thus a tolling principle was evolved as a prime corollary to the federal policy expressed in the transfer statute.

In the instant case, however, the plaintiff's claim against the defendant doctors was dismissed in the Iowa federal case because plaintiff could not obtain in personam jurisdiction over the doctors there; when the action was transferred there remained only the claim against the manufacturer, G.D. Searle & Co.[8] Hence no actual transfer is involved here as to the claim against the defendant doctors. The state policy, as we have noted, does not generally apply tolling merely because another action was pending, absent an express statutory exception.[9] We see no affirmative

**8.** We have noted with some concern statements in the transfer order in the federal court in Iowa, I R. 68–69. The order stated that the court withheld ruling on the motion of plaintiffs to transfer, and stayed its proceedings pending the ruling by the Colorado federal court on the motion for summary judgment by the doctors; and that the court "has been informed that the motion has been abandoned and the Colorado case is now proceeding toward trial. To avoid the possible inconvenience of defending in two forums, defendant G.D. Searle has now filed its own motion to transfer, which is now before this court for ruling." The court found that because an identical suit was pending in Colorado, the interests of justice would best be served by transferring the Iowa action to Colorado for the convenience of witnesses and the parties, and that the transfer would "permit consolidation and avoid the unnecessary expense and duplication of effort arising out of the dual litigation of identical claims."

Our concern is with the statement concerning a representation that the doctors' motion for summary judgment had been abandoned. An affidavit by plaintiff's counsel was filed below in opposition to summary judgment in support of plaintiff's position that the statute of limitations defense had been waived and that defend-

ants were estopped to assert the defense. That affidavit stated that Searle's motion for transfer had stated that Searle had been advised that the motion for summary judgment, which was to be filed by the co-defendants, Dr. Donaldson and Dr. Bates, in the Colorado action, had been abandoned and would not be pursued by the two doctors. I R. 64. In response, a brief filed below for the doctors stated that they had never represented through counsel or otherwise that they were waiving and giving up the affirmative defense regarding the violation of the statute of limitations, and preserved that defense in the August 27, 1981 pretrial order. I R. 71.

As noted, the estoppel and waiver contention is not raised on this appeal. The status of the Iowa suit at the time of the transfer order was that only the claim against Searle was pending and transferred to Colorado. It is this factor which distinguishes this case from the transfer cases relied on by plaintiff.

**9.** There is a statutory exception of one sort that was relied on by the plaintiff below. This is the savings statute, Colo.Rev.Stat. § 13–80–128, which provides in substance that where an action is commenced within the limitation period and is terminated because of lack of jurisdiction

countervailing federal consideration here such as the disruption of the judge-jury relation in trial of issues involved in *Byrd v. Blue Ridge Rural Electric Cooperative, supra,* 356 U.S. at 537–39, 78 S.Ct. at 900–01, calling for rejection of the state policy. The Colorado policy expressed in the state courts' decisions does not favor tolling here and the state has no statutory provision favoring such tolling.

Moreover, consideration of the outcome under state law, which would deny tolling, in light of "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws," *Hanna v. Plumer,* 380 U.S. at 468, 85 S.Ct. at 1142, does not support the adoption of a federal tolling rule at variance with the state policy. Both forum-shopping and inequitable administration of the laws might be encouraged by fashioning a federal tolling rule here. As stated in *Walker v. Armco Steel Corp.,* 446 U.S. at 753, 100 S.Ct. at 1986:

> There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the litigants. The policies underlying diversity jurisdiction do not support such a distinction between state and federal plaintiffs, and *Erie* and its progeny do not permit it.

To allow tolling here by fashioning a diverse federal rule would be an unjustified rejection of the policy adopted by the state and not a "triumph of federalism." *Board*

---

*of Regents of the University of New York v. Tomanio,* 446 U.S. at 492, 100 S.Ct. at 1799.

AFFIRMED.

---

or improper venue, the plaintiff may commence a new action upon the same cause of action within one year after the termination of the original action, or within the period otherwise allowed, whichever is later. *See supra* note 2. As explained earlier, the district court rejected the argument of plaintiff grounded on this statute, concluding that the savings statute allows for a new action only in cases where a second identical suit is filed within one year *after* termination of the original action, while here the plaintiff commenced her second action in Colorado before the Iowa federal suit was dismissed as to the defendant doctors. The statute is not reasserted on appeal and we are not convinced that there was any error in the court's interpretation of the state law. *See, e.g., Graziano v. Pennell,* 371 F.2d 761 (2d Cir.1967); *Hayden v. Ford Motor Co.,* 364 F.Supp. 398, 401 (N.D.Ohio 1973), *rev'd on other grounds,* 497 F.2d 1292 (6th Cir.1974); 54 C.J.S. *Limitations of Actions* § 287(c), at 348 (1948).