FILED
United States Court of Appeals
Tenth Circuit

September 12, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

STATE FARM MUTUAL
AUTOMOBILE INSURANCE CO.,

      Defendant – Appellant,

v.

LESLIE BOELLSTORFF,

      Plaintiff – Appellee.

No. 07-1241

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 05-cv-02192-MSK-CBS)**

Marie E. Williams (Michael S. McCarthy with her on the briefs), Faegre &
Benson LLP, Denver, CO, for Defendant-Appellant.

Walter H. Sargent (Robert B. Carey & Julie B. Cliff, The Carey Law Firm,
Colorado Springs, CO, with him on the briefs), Colorado Springs, CO, for
Plaintiff-Appellee.

Before **TACHA, EBEL,** and **MCCONNELL**, Circuit Judges.

**EBEL**, Circuit Judge.

This interlocutory appeal asks us to determine whether the class action tolling doctrine, originally announced by the Supreme Court in <u>American Pipe & Construction Co. v. Utah</u>, 414 U.S. 538 (1974), applies when an individual member of a putative class pursues an independent, individual claim before the district court has decided the class certification issue but after a non-tolled statute of limitations would have run. The district court certified this question, in part, because it involves a legal question about which there is substantial ground for differences of opinion, and so it does; the four circuits that have offered opinions on the issue have split evenly.

Plaintiff-Appellee Leslie Boellstorff ("Boellstorff") initiated an individual action against Defendant-Appellant State Farm Mutual Automobile Insurance Company ("State Farm") over four years after she suffered injuries in a car accident. Boellstorff alleged various violations of the Colorado Auto Accident Reparations Act ("CAARA" or "No Fault Act"), Colo. Rev. Stat §§ 10-4-701 to -726 (2002) (repealed effective July 1, 2003).[1] State Farm moved for summary judgment, arguing that Boellstorff's claims were untimely in light of the applicable three-year statute of limitations. Boellstorff countered that her claims

---

[1]Although the Act has since been repealed, <u>see</u> Colo. Rev. Stat. § 10-4-726 (effective July 1, 2003), the parties do not dispute that its provisions govern the instant matter because they were in effect at the time of Boellstorff's accident. All citations to CAARA herein refer to the version in effect from 1992 through 2002. <u>Cf.</u> <u>Stickley v. State Farm Mut. Auto. Ins. Co.</u>, 505 F.3d 1070, 1073 (10th Cir. 2007).

were in fact timely, and, alternatively, that a putative class action brought against State Farm even before her accident (captioned Clark v. State Farm Mutual Auto Insurance Company ("Clark" class action), No. 00-cv-01841-LTB (D. Colo. Sept. 19, 2000)) – but alleging the same conduct about which Boellstorff complains – tolled the statute of limitations under American Pipe.  State Farm responded to this latter argument by asserting that Boellstorff forfeited any benefit offered by the American Pipe doctrine when she pursued her individual claim prior to the district court's class certification decision in Clark.

The district court concluded that Boellstorff's claims were stale, but were saved nonetheless by the American Pipe tolling doctrine.  The court then certified the American Pipe question to us.  Because we believe that the Colorado Supreme Court would agree with the district court's conclusion, we affirm the district court's order denying State Farm summary judgement.[2]

## I.    BACKGROUND

On September 21, 2001, Boellstorff sustained serious injuries in a car accident while driving her then-husband Brian's Ford Explorer.  Brian Boellstorff had procured a Colorado automobile insurance policy from State Farm in May 1998.[3]  At that time, he selected the minimal level of personal injury protection

---

[2] Thus, we need not delve into the other theories Boellstorff raised in her Answer brief.

[3] For its part, State Farm contends that the Boellstorff's then-husband

(continued...)

("PIP") benefits. The parties do not dispute that Boellstorff was covered by Brian's State Farm automobile insurance policy at the time of her accident.

Within a week after the accident, State Farm sent Boellstorff a letter setting forth the PIP benefits to which she was entitled. This letter listed the minimum PIP benefits selected by Brian when he purchased the State Farm policy; the letter did not discuss the option of procuring enhanced PIP benefits. A few months later, Boellstorff retained the law firm of Abadie & Zimsky to represent her in a suit against another driver involved in her accident.[4]

**A. Colorado's Automobile Insurance Statutory Scheme**

In 1973, Colorado's legislature enacted the No Fault Act with the stated goal of "avoid[ing] inadequate compensation to victims of automobile accidents." Colo. Rev. Stat. § 10-4-702. The Act provided that all Colorado automobile liability policies must include minimum PIP benefits. See Colo. Rev. Stat. § 10-4-706. More to the point, the No Fault Act mandated that insurers offer to their

---

[3](...continued)
purchased the policy on or about June 3, 1999. The date Brian procured the policy is of no import to this appeal.

[4]The parties dispute whether Boellstorff retained Abadie & Zimsky to represent her generally "in connection with the accident" or solely to bring a personal injury claim against the allegedly negligent driver. State Farm posits that even if Boellstorff's claims did not accrue on the day she received the letter listing the minimum PIP benefits, they accrued when she retained Abadie & Zimsky. However, we need not wade into the accrual quagmire; regardless of the exact date on which Boellstorff's claims accrued (of those dates proposed by the parties), her action was timely if American Pipe applies.

policyholders the option of purchasing enhanced PIP benefits.  Id. § 10-4-710.

While the minimum PIP benefits include time and dollar cut-offs, enhanced PIP

benefits do not.[5]  See Clark v. State Farm Mut. Auto. Ins. Co. ("Clark I"), 319

F.3d 1234, 1238 (10th Cir. 2003) (noting that enhanced "PIP benefits do not place

time or dollar limitations on medical expense claims and offer the possibility of

greater wage loss reimbursements").  PIP benefits were payable to four classes of

individuals: (1) the person named as the insured in the policy; (2) household

relatives of the named insured; (3) permissive occupants of the insured vehicle;

and (4) pedestrians injured in an accident involving the insured vehicle.  Id. § 10-

4-707.

The Colorado courts eventually clarified the scope of the No Fault Act's

mandate in a series of decisions, including Brennan v. Farmers Alliance Mutual

Insurance Co., 961 P.2d 550 (Colo. Ct. App. 1998).  There, the Colorado Court of

Appeals held that Colorado insurers were obligated to offer enhanced PIP

coverage to people in all four of the § 10-4-707 categories, not just to the named

insured.  Id. at 554.  These decisions triggered a slew of litigation: many

policyholders who had not been offered enhanced coverage – and individuals in

the other three § 10-4-707 categories – brought suit under the No Fault Act

_____

[5]For a thorough parsing of the No Fault Act and Colorado court decisions
interpreting the statutory scheme, see Clark v. State Farm Mut. Auto. Ins. Co.
("Clark I"), 319 F.3d 1234, 1237-40 (10th Cir. 2003).

seeking reformation of their policies to provide benefits without the minimum PIP time and dollar cut-offs.  See, e.g., Clark v. State Farm Mut. Auto. Ins. Co. ("Clark II"), 433 F.3d 703, 705 (10th Cir. 2005).[6]

**B. The Clark Class Action**

In August 2000, Ricky Clark filed a putative class action against State Farm in Colorado state court.  Clark, a pedestrian who was struck and injured by a vehicle insured by State Farm, alleged that State Farm had routinely failed to offer or pay enhanced PIP benefits as required by the No Fault Act's § 710 and by Brennan.  See Clark I, 319 F.3d at 1237.

Clark filed suit on behalf of himself and "[a]ll injured persons covered under a State Farm automobile insurance policy who were not offered extended coverage as required by C.R.S. § 10-4-710 of the Colorado Auto Accident Reparations Act, and who were not provided the additional benefits provided for therein."  The parties do not dispute that Clark's original class definition included

---

[6]In Clark I, this court reversed a district court's decision holding that the Brennan could not be applied retroactively to Clark's claims.  See 319 F.3d at 1240, 1244.  Clark II affirmed the district court's handling of Clark's case on remand.  See 433 F.3d at 710-14.  Specifically, the Clark II court affirmed the district court's decision to (1) award Clark PIP benefits at the level of the extended pedestrian coverage which State Farm should have offered to its insured; (2) cap the PIP benefits at $200,000; (3) use the date of its order as the effective date of the reformation of Clark's policy; and (4) limit reformation of the policy to provide extended PIP benefits only to pedestrians.  Id.

Boellstorff.[7]  State Farm removed Clark's suit to federal court on September 19,

2000, predicating federal jurisdiction on the parties' diversity.  See Clark class

action, Dkt. No. 1.  The Clark case then oscillated between the U.S. District Court

for the District of Colorado and the Tenth Circuit through 2005, resulting in two

published opinions from this court.  See Clark I, 319 F.3d 1234; Clark II, 433

F.3d 703.  Clark finally filed a Motion for Class Certification on May 14, 2007.

---

[7]The fact that Boellstorff had yet to be injured at the time Clark filed his
class action also does not alter her membership in Clark's putative class.  See,
e.g., Council of and for the Blind of Delaware County Valley, Inc. v. Regan, 709
F.2d 1521, 1543 n.39 (D.C. Cir. 1983) ("[M]any class actions involve classes
whose membership predictably fluctuates over the course of the litigation. . . .
[T]he exclusion of an individual at the time the class is defined does not imply
exclusion at the time judgment is entered."); cf. MANUAL FOR COMPLEX
LITIGATION § 21.222, at 270 (4th ed. 2004) ("A class may be defined to include
individuals who may not become part of the class until later.").
        By the time the district court entered a decision on the class certification
question, however, Clark had winnowed the class to include only pedestrians
injured by vehicles insured by State Farm.  See Clark class action, Dkt. No. 227
at 1-2 (Sept. 18, 2007).  Clark did so to comply with the district court's April 9,
2007, order instructing Clark to narrow the scope of his putative class.  See id.
Dkt. No. 199 at 3-5.  We may take judicial notice of these documents from the
public record.  See, e.g., Valley View Angus Ranch, Inc. v. Duke Energy Field
Servs. Inc., 497 F.3d 1096, 1107 n.18 (10th Cir. 2007).
        Clark's narrowing of the definition would have displaced Boellstorff from
the class, had Boellstorff not done so already.  In its initial summary judgment
decision on Boellstorff's individual claim, the district court ruled that, in the
interests of judicial economy, Boellstorff could not proceed both individually and
as a member of the putative Clark class.  The court thus stayed the proceedings in
Boellstorff's individual action until Boellstorff made the decision.  She opted to
proceed with her individual claims on February 8, 2007, moving the court to lift
the stay.  For our purposes, it is important only that Boellstorff was a member of
the putative Clark class at the time she filed her individual action against State
Farm.

<u>Clark</u> class action, Dkt. No. 205. The district court denied the motion for class certification on September 18, 2007, approximately a week before State Farm filed its Reply Brief in this appeal. <u>See</u> <u>id.</u> Dkt. No. 227 at 1-2.

### C. Boellstorff's Individual Action

Boellstorff brought this individual action against State Farm on October 31, 2005, alleging violations of the No Fault Act that mirrored those alleged in Clark's complaint. As had Clark, she sought (1) reformation of the insurance policy to include enhanced PIP benefits, and (2) damages for alleged breach of contract, willful and wanton breach of contract, and breach of the implied covenant of good faith and fair dealing.

Because Boellstorff filed suit over four years after her accident, State Farm moved to dismiss the case as untimely under the No Fault Act's three-year statute of limitations. <u>See</u> <u>Nelson v. State Farm Mut. Auto. Ins. Co.</u>, 419 F.3d 1117, 1120 (10th Cir. 2005) ("[W]hen an action for benefits is brought under CAARA, it is subject to CAARA's three-year statute of limitations."). The district court converted the motion to dismiss into a Rule 56 motion for summary judgment and both parties filed supplementary materials. State Farm maintained that Boellstorff's cause of action accrued when she received the letter listing her PIP benefits or, alternatively, when she first retained counsel. Boellstorff countered that her claims were in fact timely. She also asserted that the class action tolling

doctrine initially announced in <u>American Pipe</u> saved her claims because the <u>Clark</u> action tolled the statute of limitations.

In an Order dated September 11, 2006, the district court found that Boellstorff's cause of action accrued on September 25, 2001, the date on which State Farm sent her the letter informing her of the PIP benefits to which she was entitled. As such, the No Fault Act's three-year limitations period had expired by the time Boellstorff commenced her individual action. Having held Boellstorff's claims untimely, the court continued on and concluded that <u>American Pipe</u> tolling protected her claims because of the pendency of the <u>Clark</u> action, which was filed before her claims accrued and remained pending at the time Boellstorff filed the instant, individual action. The court rejected State Farm's argument that Boellstorff had forfeited the benefits of the class action tolling doctrine by filing her individual action before the <u>Clark</u> court decided whether to certify a class.

State Farm quickly moved the court to certify the issue for appellate review pursuant to 28 U.S.C. § 1292(b).[8] The district court accepted this invitation, and,

---

[8]In relevant part, § 1292(b) provides:
When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if

(continued...)

- 9 -

on February 20, 2007, amended its September 11 Order to certify for review this question: "whether the opportunity to invoke the class action toll of American Pipe is lost by a putative class member who commences an individual action prior to a decision as to class certification . . . ." We granted State Farm's Petition for Permission to Appeal on May 25, 2007. Hence, we exercise jurisdiction pursuant to § 1292(b).[9] We answer the certified question in the negative.

## II.    DISCUSSION

### A. Standard of Review

On interlocutory appeal, as always, we review de novo the denial of a motion for summary judgment, applying the same standard as the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Chessin v. Keystone Resort Mgmt., Inc., 184 F.3d 1188, 1191 (10th Cir. 1999); see also Qwest Corp. v. AT&T Corp., 479 F.3d 1206, 1209 (10th Cir. 2007). We are governed by this standard even when we sit in diversity. See Morris v. Travelers Indem. Co. of Am., 518 F.3d 755, 758 (10th Cir. 2008).

---

[8](...continued)
application is made to it within ten days after the entry of the order . . . .
28 U.S.C. § 1292(b).

[9]Of course, an order denying summary judgment is ordinarily not immediately appealable. See Powell v. Mikulecky, 891 F.2d 1454, 1456 (10th Cir. 1989).

**B. Applicable Law**

As this is a diversity action, we must apply Colorado law in deciding whether Boellstorff's claims are time-barred. Burnham v. Humphrey Hospitality REIT Trust, Inc., 403 F.3d 709, 712 (10th Cir. 2005) ("A federal court sitting in diversity applies state law for statute of limitations purposes."). Additionally, we must follow Colorado's tolling rules, as they are "an integral part of the several policies served by the statute of limitations." Cook v. G.D. Searle & Co., 759 F.2d 800, 802 (10th Cir. 1985) (quoting Walker v. Armco Steel Corp., 446 U.S. 740, 751 (1980)). In so doing, "we apply the most recent statement of state law by the Colorado Supreme Court." Clark II, 433 F.3d at 709. Absent such guidance, we consider "decisions of a state's intermediate appellate courts [as] some evidence of how the state supreme court would decide the issue," though such decisions are only persuasive authority. Id. (quotation omitted).

Colorado's Rule 23 "is virtually identical" to the Federal Rule, and so Colorado courts "rely on cases applying the federal rule." Goebel v. Colo. Dep't of Instits., 764 P.2d 785, 794 n.12 (Colo. 1988); see also Rosenthal v. Dean Witter Reynolds, Inc., 883 P.2d 522, 531 (Colo. Ct. App. 1994), aff'd in part, rev'd in part, 908 P.2d 1095 (Colo. 1995). Colorado has adopted American Pipe's class action tolling doctrine. See Kuhn v. Colo. Dep't of Rev., 897 P.2d 792, 795 & 798 (Colo. 1995) (affirming, without comment on American Pipe, a trial court order asserting that "[t]he filing of a class action lawsuit tolls the limitations

period as to all putative class members, even before the certification of the class"); Rosenthal, 883 P.2d at 531-32 ("The statute of limitations remains tolled for all members of the putative class until class certification is denied."); Levine v. Empire Sav. & Loan Ass'n, 579 P.2d 642, 646 (Colo. Ct. App. 1977). But neither the Colorado Supreme Court nor any Colorado appellate court has spoken to the instant issue. With this in mind, we will consult Colorado cases in the first instance, but will also rely on federal cases interpreting American Pipe.

**C. Merits**

The controlling issue certified by the district court is whether Boellstorff, who was unequivocally a member of the putative Clark class, may avail herself of the American Pipe tolling doctrine to save her otherwise time-barred claim even though she filed her claim *before* the Clark court decided the class certification question. We anticipate that the Colorado Supreme Court would, as do we, find persuasive the reasoning of In re WorldCom Securities Litigation, 496 F.3d 245 (2d Cir. 2007). We therefore hold that Colorado would apply the American Pipe doctrine to toll the statute of limitations for otherwise-stale individual claims filed before the class certification decision.

**1. American Pipe and its Progeny**

The American Pipe Court held that parties are entitled to intervene in an action after the denial of class certification even though the statute of limitations had expired as to the parties seeking to intervene. See American Pipe, 414 U.S.

at 552-53.  The "commencement of the original class suit" tolls the running of the statute of limitations "for all purported members of the class" until after the denial of the class certification motion,[10] id. at 553, or until they "chose not to continue" as a class member, id. at 551.  At that juncture, the statute of limitations begins running again.  Id.

Conceptually, American Pipe incarnates the principle that the class action is a representative creature.  See id. at 550.  That is, members of a putative class are treated as if they were parties to the action itself "until and unless they received notice thereof and chose not continue."  Id. at 551.  Thus, the filing of a class action, in a classic legal fiction, causes the courts to treat "members of the asserted class" as if they "hav[e] instituted their own actions, at least so long as they continue to be members of the class . . . " and they have "the benefit of tolling . . . for as long as the class action purports to assert their claims."  In re WorldCom, 496 F.3d at 255; see also American Pipe, 414 U.S. at 550 ("[T]he filing of a timely class action complaint commences the action for all members of the class as subsequently determined.").  Relying on the representativeness of class actions, the American Pipe Court concluded that "no different a standard should apply to those members of the class who did not rely upon the

---

[10]At least when the denial was because of the "failure to demonstrate that the class was so numerous that joinder of all members is impracticable." American Pipe, 414 U.S. at 552-53 (quotation omitted).

commencement of the class action (or who were even unaware that such a suit existed) . . . ." American Pipe, 414 U.S. at 551; see also id. at 552.

Pragmatically, the Court also concluded that a tolling rule was necessary to advance the goals of Rule 23, namely "the efficiency and economy of litigation." Id. at 553. If not for a tolling doctrine, individuals would feel compelled to file placeholder lawsuits prior to the expiration of the statute of limitations, thereby clogging the channels of the court with suits already encompassed by the class action. Id. at 551, 553-54 ("[A] rule requiring successful anticipation of the determination of the viability of the class would breed needless duplication of motions."). The tolling doctrine clears that clutter by sidelining lawsuits that might have been filed merely to preserve the option of later, individual intervention. Id. at 551-52, 553-54.

Lastly, the American Pipe Court concluded that the tolling doctrine would not subvert the purpose of statutes of limitation. Id. at 554-55. Such statutes are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Id. at 554 (quoting Order of R.R. Telegraphers v. Ry. Express Agency, 321 U.S. 342, 348-49 (1944)). Triggered as it is by the filing of a class action, the tolling doctrine also obviates surprises. The class action "notifies the defendants not only of the substantive claims being

brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." Id. at 555.

The Supreme Court subsequently expanded on American Pipe's holding. First, the Court asserted – albeit in *dicta* – that American Pipe disposed of the argument that class members, even if notified individually of the class's certification, would not exercise their Federal Rule of Civil Procedure 23(c)(2)(B)'s "opt-out" rights because of concerns that their claims would be time-barred. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176 n.13 (1974). Eisen asserted that American Pipe dispelled this concern because it "established that commencement of a class action tolls the applicable statute of limitations as to all members of the class," whether the class was ultimately certified or not. Id.

Second, in Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983), the Court reemphasized the broad strokes of American Pipe: "[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." Id. at 353-54 (quoting American Pipe, 414 U.S. at 554). This is the case regardless of whether those class members sought to intervene or to bring individual actions after the denial of class certification. Id. at 354. The Court also underscored its holding that, "once the statute of

limitations has been tolled, <u>it remains tolled for all members of the putative class until class certification is denied</u>."  <u>Id.</u> (emphasis added).[11]

### 2. Lower Court Opinions on the Instant Issue

<u>American Pipe</u>, <u>Eisen</u>, and <u>Crown</u> all address the question of whether a litigant may intervene or file an individual suit <u>after</u> the class certification decision.  In this case, however, the court must consider an earlier window, the time period running from the moment a class action is filed up to the time when the trial court denies class certification or the plaintiff opts not to continue as a member of the class.  The Supreme Court has not addressed this question squarely, leaving it to percolate in the lower courts.  At the federal appellate level, the Second Circuit has recently considered this very issue in <u>In re WorldCom</u>, holding that a plaintiff who chooses to bring an individual action while the class action is pending can still claim the benefit of the <u>American Pipe</u> tolling doctrine.  And, even more recently, the Ninth Circuit, in <u>In re Hanford</u>

---

[11]In a final case fleshing out <u>American Pipe</u>, the Supreme Court clarified the effect of the tolling doctrine on the statute of limitations.  <u>See</u> <u>Chardon v. Soto</u>, 462 U.S. 650 (1983).  The <u>Chardon</u> Court recognized that the filing of a class action tolled the statute of limitations, but maintained that <u>American Pipe</u> had not explained whether the tolling rule suspended the limitations period, restarted the limitations clock entirely, or extended the period.  <u>Id.</u> at 652 n.1.  The Court concluded that a federal court handling a 42 U.S.C. § 1983 claim, must look to state tolling rules – as mandated by 42 U.S.C. § 1988 – to determine what *effect* the filing of the class action had on the state statute of limitations.  <u>Id.</u> at 654-57 & 662.  Accordingly, <u>Chardon</u> directs the courts to look to the tolling rules associated with a particular statute of limitations for the effect of the <u>American Pipe</u> rule.

Nuclear Reservation Litig., — F.3d —, 2008 WL 2892318 (9th Cir. July 29, 2008), has adopted the reasoning of In re WorldCom. In earlier cases, however, both the Sixth and First Circuits have reached the opposite conclusion.[12]

We agree with the analysis of the Second and Ninth Circuits. After reviewing the Supreme Court's precedents, the Second Circuit concluded that it should take at face value the Court's repeated assertion that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." In re WorldCom, 496 F.3d at 254 (quoting Crown, 462 U.S. at 353-54). The court also echoed the point that tolling does not undermine the purpose of statutes of limitation. Id. at 255.

Additionally, "[w]hile reduction in the number of suits filed by class members" would follow from a forfeiture rule, "it was not the purpose of American Pipe either to reduce the number of suits filed, or to force individual plaintiffs to make an early decision whether to proceed by individual suit or rely on a class representative." Id. at 256. Granted, judicial efficiency and economy were foremost in the American Pipe Court's mind, but the case "was not meant to induce class members to forgo their right to sue individually." Id. Thus, the tolling doctrine applies to protect separate suits whenever they are filed. Id.

_____

[12]See Wyser-Pratte Management Co. v. Telxon Corp., 413 F.3d 553 (6th Cir. 2005); Glater v. Eli Lilly & Co., 712 F.2d 735, 739 (1st Cir. 1983).

The Ninth Circuit recently relied on the In re WorldCom rule in concluding that members of a plaintiff-class who filed otherwise untimely individual suits before the putative class representatives decided to withdraw their motion for certification were "entitled to the benefits of American Pipe tolling." In re Hanford, 2008 WL 2892318, *16. As did the Second Circuit, the Ninth Circuit concluded that "applying American Pipe tolling to plaintiffs who filed individual suits before certification is consistent with the purpose underlying statutes of limitation." Id. at *15. Moreover, that "the American Pipe doctrine protects plaintiffs from being forced to file suit before the certification decision . . . doesn't mean that plaintiffs who file before certification are not entitled to tolling. They have a right to file at the time of their choosing . . . ." Id. at *16 (citation omitted).

State Farm counsels that this court should instead rely on the Sixth Circuit's Wyser-Pratte decision. There, after it had already decided that "the applicable two-year statute of limitations expired before this class action was filed," 413 F.3d at 568, the court continued on to "find in the alternative" that the "purposes of American Pipe tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification, but are when plaintiffs delay until the certification issue has been decided." Id. at 569. Specifically, the Sixth Circuit concluded that freezing the situation until a class certification decision has been issued ensures that the "courts will not be

- 18 -

burdened by separate lawsuits which, in any event, may evaporate once a class has been certified." Id. (quoting In re WorldCom Inc. Sec. Litig., 294 F. Supp. 2d 431, 452 (S.D.N.Y. 2003)[13]). Those separate lawsuits, the court rationalized, might disappear because putative class members "usually are in a far better position [after the class certification decision] to evaluate whether they wish to proceed with their own lawsuit, or to join a class . . . ." Id. (quoting In re WorldCom, 294 F. Supp. 2d at 452).[14]

State Farm also relies on Glater, a First Circuit case. There, the plaintiff argued that she should be considered a New Hampshire resident on the ground that she was a resident of that state at the time of the filing of a separate class action, which named Eli Lilly as a defendant and included the plaintiff in the

---

[13]The Second Circuit subsequently overturned this decision. See In re WorldCom, 496 F.3d at 256.

[14]This same argument underpins many district court decisions holding that American Pipe tolling does not save time-barred claims filed before the class certification decision. See, e.g., In re Enron Corp. Secur. Litig., 465 F. Supp. 2d 687, 730 (S.D. Tex. 2006) ("Their actions [filed pre-certification] constitute the inefficiency of multiple suits prior to class certification that the American Pipe tolling doctrine was developed to avoid."); Chazen v. Deloitte & Touche LLP, 247 F. Supp. 2d 1259, 1272 (N.D. Ala. 2003), rev'd on other grounds, 88 Fed. Appx. 390 (11th Cir. Dec. 12, 2003) (unpublished); In re Brand Name Prescription Drugs Antitrust Litig., No. 94 C 897, 1998 WL 474146, *8-*9 (N.D. Ill. Aug. 6, 1998); Wachovia Bank & Trust Co. v. Nat'l Student Mktg. Corp., 461 F. Supp. 999, 1012 (D.D.C. 1978), rev'd on other grounds, 650 F.2d 342 (D.C. Cir. 1980).

putative class.[15] See 712 F.2d at 739. The First Circuit rejected this argument, noting that "American Pipe says nothing about [the plaintiff's] ability to maintain a separate action while class certification is pending. The policies behind Rule 23 and American Pipe would not be served, and in fact would be disserved, by guaranteeing a separate suit at the same time that a class action is ongoing." Id. Thus, the court concluded that "the pendency of the [separate] class action did not preclude a dismissal of th[e] [plaintiff's] case for lack of personal jurisdiction." Id.

Despite the concerns of the Sixth and First Circuits, we find the rationale of the In re WorlCom and In re Hanford decisions consonant with American Pipe's language and its conceptual and pragmatic underpinnings. For the following reasons, we join the Second and Ninth Circuits.

First and foremost is the Supreme Court's language in American Pipe and Crown. Crown underscored what American Pipe first asserted:

> "The commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class would have been parties had the suit been permitted to continue as a class action." Once

---

[15]The residency issue was important not to the issue of the court's subject-matter jurisdiction, as one might expect, but to the district court's decision not to exercise personal jurisdiction over the defendant under New Hampshire's long-arm statute. Glater, 712 F.2d at 738. The district court concluded the plaintiff was not a resident of New Hampshire and that the state thus had little interest in her suit or in protecting her; accordingly, the court decided not to exercise personal jurisdiction over the foreign defendant. Id.

- 20 -

the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.

Crown, 462 U.S. at 353-54 (quoting American Pipe, 414 U.S. 554) (internal citation omitted).  The Supreme Court's language is clear.  And at least one Colorado appellate court has adopted this particular language from American Pipe, as contoured by Crown.  See Rosenthal, 883 P.2d at 531 ("The commencement of a class action tolls the statute of limitations for all members of the putative class . . . until class certification is denied.").[16]  We see no reason why Colorado would not give effect to the broad language of those cases.  This broad language suggests that the statute of limitations applicable to Boellstorff's claim remained tolled while the putative Clark class remained in limbo.

Second, "in a sense, application of the American Pipe tolling doctrine to cases such as this one does not involve 'tolling' at all."  Joseph v. Wiles, 223

---

[16]In Rosenthal, a putative class action had been initiated within the statute of limitations period and before the applicable statute of repose barred suit.  Rosenthal, 883 P.2d at 525.  After the repose limit passed, the named class representative sought to amend the complaint to add another named representative.  Id.  The trial court, in rejecting class certification, concluded that the statute of repose would apply to the second class representative.  Id.  The Colorado Court of Appeals disagreed.  Id. at 531-32.  After finding no authority on point, the court held that

> as long as the party seeking to act as a class representative does not commence a new, separate suit as class representative, but merely seeks to maintain the currently pending and timely filed action as a class action and act as class representative, the statute of repose does not apply.

Id. at 531.  As such, Rosenthal has little to say about the situation we now confront.

F.3d 1155, 1168 (10th Cir. 2000). The class action mechanism's inherent representativeness means that each putative class member "has effectively been a party to an action" against the defendant "since a class action covering him" was filed. Id. American Pipe made much of this principle, positing that the class action tolling doctrine would apply regardless of the reliance or awareness of putative class members. 414 U.S. at 551-52. Thus, when Clark filed a class action against State Farm in August 2000, alleging the same claims later asserted by Boellstorff, Clark in essence pre-filed Boellstorff's suit. Thereafter, when Boellstorff filed her independent suit she simply retook the reins from Clark.

Third, State Farm was afforded the benefit of the No Fault Act's statute of limitations. Clark's suit put State Farm on notice of the "substantive claims being brought against" it as well as the "number and generic identities of the potential plaintiffs." American Pipe, 414 U.S. at 555; see also In re WorldCom, 496 F.3d at 254 ("[T]he initiation of a class suit gives defendants all the information they need to prepare their defense.") (citing American Pipe, 414 U.S. 353-53). Accordingly, application of the tolling doctrine here would not undermine the policy choices embodied by Colorado's statute of limitations. See In re WorldCom, 496 F.3d at 255.

Fourth, as Boellstorff notes, locking putative class members into the class until the class certification decision makes little sense and could adversely affect

certain individuals. Rule 23(c)(1)(A)[17] mandates that the trial judge "[a]t an early practicable time" after a putative class action is filed "determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). In practice, however, this decision may take time. Here, for example, Clark filed his class action in August 2000, but did not file a motion for class certification until May 2007, nearly seven years later. The Second Circuit's rule permits litigants to decide to bring an individual action if they either (1) deem their own claims valuable enough or (2) decide that class certification is doubtful. Cf. In re WorldCom, 496 F.3d at 256 (noting that the American Pipe doctrine "was not meant to induce class members to forgo their right to sue individually"); Jahn v. ORCR, Inc., 92 P.3d 984, 989 (Colo. 2004) (noting prerogative of class members to opt-out of class and pursue claims individually). Forcing such plaintiffs to wait out a class certification decision makes even less sense when we consider the costs of delay (for example, the possibility that the evidence will grow stale and added time the plaintiff must go without recovery).

Fifth, on the macrocosmic level, the Second Circuit's rule would not substantially impede the efficiency and economy of the class action mechanism. Presumably, the only litigants likely to avail themselves of the Second Circuit's

---

[17]Colorado Rule of Civil Procedure 23(c)(1) similarly provides: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained."

rule are those that would opt out of a certified class in any case. Permitting early "opt-outs" would not dramatically increase the number of cases filed: most litigants with claims valuable enough to pursue separately will likely have filed their individual claims before the end of their own limitations period. As such, the group that would file individual suits during the window at issue here is likely to approximate in number the group that would later opt-out if a class is certified or file individual suits if not. The courts' case-load will likely remain the same; the only difference is *when* those cases show up on the dockets. State Farm, in our opinion, has not made a convincing case that imposing an individual claim moratorium until the moment of the class certification decision would have any noticeable effect on judicial efficiency and economy.

In fact, State Farm's proposed rule has the potential to backfire. The rule would compel individual class members to make a choice as the limitations period for their individual claim approaches: file an individual action now or sit tight for a class certification decision, no matter how long it might take. Litigants in this bind might file placeholder suits rather than risk placing their individual actions on ice during a potentially prolonged class certification process. Thus, State Farm's proposed rule might well precipitate a "needless duplication" of actions that would "deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure." American Pipe, 414 U.S. at 553-54.

State Farm complains that the Second Circuit's rule allows plaintiffs to "have their cake and eat it too," that is, to rely on a representative suit as a placeholder for purposes of the statute of limitations and then ditch the representative later. See In re Brand Name Prescription Drugs Antitrust Litig., 1998 WL 474146, at *8. However, that is the essence of the American Pipe holding even in the situation where the individual suit was not filed until after resolution of the class certification decision. In addition, as noted above, the American Pipe and Crown decisions highlight the fact that reliance or even awareness of the class action are irrelevant. In this vein, we have concluded that American Pipe tolling is "legal rather than equitable in nature," Wiles, 223 F.3d at 1166, and operates regardless of the putative class member's awareness or reliance.[18] Thus, State Farm's protests are misplaced because the alleged unfairness of such a rule is besides the point. See Schimmer v. State Farm Mut.

---

[18]In this sense, the American Pipe doctrine acts like other legal tolling rules. Consider, for example, the law tolling statutes of limitation for members of the military on active service, see Conroy v. Aniskoff, 507 U.S. 511, 513-14 (1993) (permitting active U.S. Army officer to benefit from tolling provision of the Soldiers' and Sailors' Civil Relief Act of 1940 ("SSCRA") to bring a suit while officer was still on active duty); Mason v. Texaco, Inc., 862 F.2d 242, 244-45 (10th Cir. 1988) (concluding that otherwise untimely suit brought by then-active serviceman was saved by SSCRA), or the rules relating to those who are *non compos mentis*, see, e.g., Barnhill v. Pub. Serv. Co. of Colo., 649 P.2d 716, 717 (Colo. Ct. App. 1982) ("[W]e hold that the statutory period . . . never started to run because plaintiff's mental incapacity continued through the date this action was commenced."). These cases undermine (though rather obliquely) State Farm's forfeiture argument because the plaintiffs in these cases were permitted to file stale claims before the tolling period's end.

<u>Auto. Ins. Co.</u>, No. 05-cv-02513-MSK, 2006 WL 2361810, at *6 (D. Colo. Aug. 15, 2006) ("The problem with <u>Wyser-Pratte</u>, however, is that it treats class action tolling as an equitable doctrine in which fairness considerations drive its application.").

Similarly, State Farm's assertions about the potential for abuse of this tolling rule are unavailing. Justice Blackmun's concurrence in <u>American Pipe</u> cautioned that the opinion "must not be regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights." <u>American Pipe</u>, 414 U.S. at 561 (Blackmun, J., concurring). State Farm presses this point, raising the specter of countless class action suits filed solely to suspend the limitations period. However, there is no evidence that <u>American Pipe</u> released any such flood of class actions, and the application of <u>American Pipe</u> that we approve here is only a very small extension of <u>American Pipe</u>. And, of course, it is not in the interest of class action counsel to help individual plaintiffs split off from the class.

## III.  CONCLUSION

The rule of the Second and Ninth Circuits, articulated in <u>In re WorldCom</u> and <u>In re Hanford</u>, comports with the language and the legal and pragmatic bases for <u>American Pipe</u> and its progeny. The <u>American Pipe</u> rule "preserves for class members a range of options pending a decision on class certification." <u>Crown</u>,

462 U.S. at 354 (Powell, J., concurring). One of those options is to bring an individual suit during the pendency of a district court's consideration of class certification in a class action raising the same issues and thereby take advantage of the tolling effect that, under American Pipe, the class action has on statute of limitations. Thus, we conclude that Colorado would concur with the Second and Ninth Circuits and, as such, **AFFIRM** the district court's decision to deny State Farm summary judgment.