PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3326
_____

BAHAA ALY; TINA DAVIS; PHILLIP GARLAND;
ERINCH OZADA,

Appellants,

v.

VALEANT PHARMACEUTICALS INTERNATIONAL
INC,
n/k/a Bausch Health Companies Inc.;
J. MICHAEL PEARSON; ROBERT L. ROSIELLO;
DEBORAH JORN;
ARI S. KELLEN; TANYA CARRO; HOWARD B.
SCHILLER
_____

On Appeal from the United States
District Court for the District of New Jersey
3:18-cv-17393
District Judge: Hon. Michael A. Shipp
_____

Argued October 20, 2020
_____

Before: GREENAWAY, JR., COWEN, and FUENTES,
*Circuit Judges*.

(Opinion Filed: June 16, 2021)

Hung G. Ta [ARGUED]
JooYun Kim
Hung G. Ta, Esq. PLLC
250 Park Avenue, 7ᵗʰ Floor
New York, NY 10177

Peter Safirstein
Elizabeth Metcalf
Safirstein Metcalf LLP
14 Penn Plaza, 9ᵗʰ Floor
New York, NY 10122

*Counsel for Appellants*

Paul C. Curnin
Craig S. Waldman [ARGUED]
Simpson Thacher & Bartlett LLP
425 Lexington Ave.
New York, NY 10017-3954

Richard Hernandez
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

Benjamin Sokoly
Winston & Strawn LLP

2

200 Park Avenue
New York, NY 10166-4193

Joseph L. Motto
Winston & Strawn, LLP
35 W. Wacker Drive
Chicago, IL 60601

Matthew Petrozziello
Elliot Greenfield
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

Barry A. Bohrer
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

*Counsel for Appellees*

Michael J. Hampson [ARGUED]
Mark B. Kramer
Lawrence M. Rolnick
Rolnick Kramer Sadighi
1251 Avenue of the Americas
18th Floor
New York, NY 10020

Sheila A. Sadighi
Rolnick Kramer Sadighi
300 Executive Drive
Suite 275

West Orange, NJ 07052

**Counsel of Amicus Appellant**

_____

OPINION

_____

FUENTES, *Circuit Judge*.

This is an appeal from the District Court's order dismissing the complaint filed by individual shareholders of Valeant Pharmaceuticals Inc. ("Valeant" or the "Company") as untimely. A class action (the "Class Action") was filed against Valeant on behalf of investors who purchased its stock between February 23 and October 20, 2015 (the "Relevant Period").[1] Appellants were putative members of that class, but by December 2018, the District Court had still not ruled on class certification. Rather than wait for a decision, Appellants filed the present "opt-out" complaint bringing the same claims in their individual capacities (the "Individual Complaint"). The District Court dismissed the Individual Complaint as untimely under the applicable two-year limitations period, concluding that the tolling doctrine established in *American Pipe & Construction Company v. Utah* did not apply.[2] That doctrine

---

[1] The Class Action, *In re Valeant Pharms. Int'l Inc. Sec. Litig.*, No. 15-cv-7658, was filed in the District Court of New Jersey.

[2] 414 U.S. 538 (1974).

is central to this appeal.

Putative class members may recover as part of the class or seek individual recourse, but they generally cannot do both.[3] Complications tend to arise, however, around the class-certification stage. Members may initially intend to proceed as part of a class, but certification may be denied months or years later for reasons outside their control.[4] Alternatively, during the pendency of a class action, members may discover that their individual claims are more valuable than those of the class and decide to pursue them in an opt-out complaint even if certification is likely. In either case, members are generally allowed to initiate an individual action, but may run into limitations issues given the delay. This is where *American Pipe* comes in.

When a class complaint is filed, *American Pipe* tolls the limitations period governing the individual claims of putative members. In the absence of such a rule, members may feel compelled to file duplicative individual suits bringing the same claims to protect their rights in the event certification is later denied. Otherwise, members would risk allowing their individual limitations periods to expire, potentially leaving them with no recourse in the long run. The doctrine is therefore intended to protect the rights of putative members while

---

[3]     *See* Fed. R. Civ. P. 23(c)(2)(B) (noting the binding effect of a class judgment unless a member requests to be excluded).

[4]     *See* Fed. R. Civ. P. 23(b)(3) (setting forth certification criteria).

simultaneously avoiding needless identical lawsuits.

On appeal, the parties dispute whether *American Pipe* tolling applies to individual claims that are filed before a certification decision is made. Appellants argue that the limitations period is tolled regardless of the point at which individual claims are filed. Appellees respond, and the District Court agreed, that members who wish to benefit from *American Pipe* must wait to file individual claims until after the court rules on certification, which Appellants did not do. For the reasons that follow, we conclude that *American Pipe* tolled the limitations period for the claims raised in the Individual Complaint. We will vacate and remand for further proceedings.

**I.**[5]

**A.**

---

[5] The District Court had jurisdiction under Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. Our review is *de novo*. *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Sec. Trans., Inc.*, 730 F.3d 263, 268 (3d Cir. 2013). Because this is an appeal from a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), the facts in this section are as alleged by Appellants. *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014) ("We are required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant.") (internal quotation marks omitted).

The issue before us relates solely to the timeliness of the Individual Complaint, but we will provide a brief recitation of the facts for context. Valeant develops and manufactures generic pharmaceuticals. Appellants purchased stock in Valeant during the Relevant Period. Prior to their purchase, the Company changed its business model to focus more on acquiring new drugs from other companies rather than developing its own. This approach was intended to significantly cut research-and-development costs and allow Valeant to market its drugs "more efficiently."[6] In the years that followed, Valeant made promising representations about the Company's financial performance based on its new business model and approach. For instance, investors were assured that Valeant's superior marketing and leadership resulted in a sales volume that was "greater than price in terms of [Valeant's] growth," and that the Company was maintaining "extremely high ethical standard[s]" in the process.[7]

As a result of this and other factors, the price of Valeant stock skyrocketed nearly 350% by the end of the Relevant Period. Appellants argue that this value was artificially inflated, however, and did not accurately represent the Company's financial health. Specifically, they argue that the new business model "relied on a secret, Valeant-controlled pharmacy network" and "deceptive practices that exposed the Company to enormous risks."[8] This network purportedly allowed Valeant to charge third-party purchasers and patients

---

[6]    App. 49 ¶ 5.

[7]    App. 49-50 ¶ 6 (emphasis omitted).

[8]    Appellants' Br. at 6.

7

much higher prices for its drugs than they were worth. Following a government investigation and private litigation against Valeant, the Company began disclosing its allegedly fraudulent practices in late 2015. A number of Valeant executives were fired, and the value of its stock plummeted almost 90% by August 2016. The Company's shareholders claim to have suffered over $76 billion in market capitalization losses as a result, which prompted the filing of numerous class and individual complaints, including the ones relevant to this action.[9]

**B.**

The first complaint in the Class Action was filed in October 2015. Several other class complaints alleging the same or similar violations were also filed around this time. Those actions were consolidated, and the operative consolidated complaint was filed on June 24, 2016 (the "Class Complaint"). The Class Complaint alleged violations of Sections 10(b) and 20(a) of the Exchange Act[10] and Rule 10b-5.[11] Those claims were governed by a two-year statute of limitations or a five-year repose period, whichever came first.[12]

---

[9] In December 2019, Valeant announced that the Class Action had been settled with respect to certain defendants, excluding the ones named in the present action, for $1.2 billion subject to court approval.

[10] 15 U.S.C. §§ 78j(b), 78t(a).

[11] 17 C.F.R. § 240.10b-5.

[12] *See* 28 U.S.C. § 1658(b) (Section 10(b) claims must be brought within "2 years after the discovery of the facts constituting the violation" but, in any event, no later than "5

8

Valeant moved to dismiss the Class Complaint for failure to state a claim, which the District Court denied.

Prior to a certification decision, on December 19, 2018, Appellants filed the Individual Complaint that is the subject of this appeal, bringing the same claims under Section 10(b), Rule 10b-5, and Section 20(a), subject to the same two-year limitations and five-year repose periods. Appellees moved to dismiss the Individual Complaint as untimely, arguing that the limitations period began to run in June 2016 when the Class Complaint was filed and had therefore already expired.[13] They argued that *American Pipe* could not save the Individual Complaint because it was filed *before* a certification decision

_____

years after such violation."). A defendant can only be liable under Section 20(a) if there is first a finding of liability under another chapter, such as Section 10(b). *See* 15 U.S.C. § 78t(a) ("Every person who . . . controls any person *liable under any provision of this chapter* . . . shall also be liable jointly and severally with and to the same extent as such controlled person.") (emphasis added). The viability of the Section 20(a) claims therefore depends on the viability of the Section 10(b) claims. If the Section 10(b) claims are untimely, the Section 20(a) claims must be dismissed as well.

[13]     We do not reach this issue today, but the parties dispute whether the Individual Complaint would have been timely even if we were to conclude that tolling does not apply. The District Court concluded that the limitations period began to run when the Class Complaint was filed in June 2016 because at that point, Appellants had sufficient knowledge to file their individual claims with sufficient detail and particularity.

was made, and the doctrine was only intended to apply to post-certification individual claims.

The District Court agreed, adopting its reasoning in a related case, and granted Valeant's motion.[14] The District Court explained that judicial efficiency—a primary purpose of *American Pipe*—"favors delaying individual claims until after a class-certification denial"[15] so that identical class and individual suits are not unnecessarily proceeding at the same time. It feared that extending *American Pipe* to individual claims filed before a certification ruling would encourage copy-cat suits, forcing the courts to deal with "dispositive [individual] motions rehashing legal and factual issues" that were already resolved in the class context.[16] The District Court also believed its decision did not prejudice Appellants' individual rights because they could have taken several other steps to protect them. For instance, they could have simply filed the Individual Complaint within the initial two-year period to be safe, or "waited until [after] the Court's decision

---

[14]    *See* App. 10-11 ("In *Northwestern Mutual*, the Court concluded that *American Pipe* tolling did not apply to the plaintiffs' claims. The Court adopts the rationale articulated in *Northwestern Mutual* and reaches the same conclusion here.") (citing *Nw. Mut. Life Ins. Co. v. Valeant Pharms. Int'l, Inc.*, No. 18-15286, 2019 WL 4278929 (D.N.J. Sept. 10, 2019)).

[15]    *Nw. Mut.*, 2019 WL 4278929, at *10 (quoting *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1802 (2018)).

[16]    *Id.*

on class certification" to take advantage of *American Pipe* tolling.[17]  This appeal followed.

## II.

## A.

Our analysis begins with the history of the *American Pipe* doctrine.  In that case, new parties filed an untimely motion to intervene as plaintiffs in a class action after certification was denied.[18]  The lower court denied the intervention motion as untimely.[19]  In reversing that decision, the Supreme Court explained that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."[20]  It believed that a contrary rule "would deprive . . . class actions of the efficiency and economy of litigation which is a principal purpose of [Federal Rule of Civil Procedure 23]" because "[p]otential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable."[21]  The Court further explained that this rule was consistent with the function of limitations periods generally, which is to prevent surprise through the revival of

---

[17]     *Id.*

[18]     414 U.S. at 544.

[19]     *See id.*

[20]     *Id*. at 554.

[21]     *Id.* at 553.

11

old claims.[22]  But surprise is not an issue here, because the filing of a class complaint notifies the defendant of the substantive claims against it as well as the "number and generic identities of the potential plaintiffs who may participate in the judgment."[23]

The Supreme Court extended the doctrine beyond the intervention context in *Crown, Cork & Seal Company v. Parker*, holding that it also tolled the limitations periods governing the individual claims of class members.[24]  In doing so, the Court explained that "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.  At that point, class

---

[22]    *Id.* at 554.

[23]    *Id.* at 555; *see also Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353 (1983) ("Tolling the statute of limitations . . . creates no potential for unfair surprise [in class actions], regardless of the method class members choose to enforce their rights upon denial of class certification.").  The Court also considered the issue briefly in *Eisen v. Carlisle & Jacquelin*, confirming that *American Pipe* applied to individual opt-out actions.  417 U.S. 156, 176 n.13 (1974).

[24]    462 U.S. at 350 ("There are many reasons why a class member, after the denial of class certification, might prefer to bring an individual suit rather than intervene.  The forum in which the class action is pending might be an inconvenient one, for example, or the class member might not wish to share control over the litigation with other plaintiffs once the economies of a class action were no longer available.").

members may choose to file their own suits."[25] The Court recognized that extending *American Pipe* in this way could lead to an increase in litigation, but while "a defendant may prefer not to defend against multiple [individual] actions in multiple forums once a class has been decertified, this is not an interest that statutes of limitations are designed to protect."[26] And in any event, "avenues exist by which the burdens of multiple lawsuits may be avoided," such as consolidation and multidistrict proceedings.[27]

The Supreme Court has since declined to apply the doctrine in other contexts. In *CalPERS v. ANZ Securities*,[28] the Court held that *American Pipe* does not toll statutes of repose. Unlike limitations periods, which generally begin to run when the plaintiff has sufficient knowledge to file a complaint, repose periods begin to run when the wrongdoing occurs, regardless of the plaintiff's knowledge.[29] While limitations periods discourage plaintiffs from sleeping on their rights, repose periods reflect a policy determination that defendants "should be free from liability after the legislatively determined

---

[25] *Id.* at 354.

[26] *Id.* at 353.

[27] *Id.*; *see also McKowan Lowe & Co. v. Jasmine, Ltd.*, 295 F.3d 380, 389 (3d Cir. 2002) (noting that the Court was "confident of the capacity of district courts to control abuse or ineptitude" that may result as an extension of *American Pipe* to certain class claims).

[28] 137 S. Ct. 2042 (2017).

[29] *Id.* at 2049.

period of time."[30]  Repose periods are therefore not generally subject to equitable tolling, and the Court saw no reason to make an exception under *American Pipe*.[31]

Later, in *China Agritech, Inc. v. Resh*, the Supreme Court added that *American Pipe* does not permit "follow-on class action[s]" to be filed "past expiration of the statute of limitations."[32]  There, the plaintiffs sought to file a new untimely *class* complaint after certification was denied in the previous attempt.  They argued that *American Pipe* applies equally to class complaints as it does to individual claims.  In rejecting this theory, the Court reasoned that "*American Pipe*

---

[30]     *Id.* (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014)).

[31]     *See id.* at 2051 ("The purpose and effect of a statute of repose . . . is to override customary tolling rules arising from the equitable powers of courts. . . . [T]he Court repeatedly has stated in broad terms that statutes of repose are not subject to equitable tolling.").  The Court in *ANZ* also rejected the plaintiffs' constructive-filing argument—i.e., that the timely filing of a class complaint actually "brings" a plaintiff's individual suit for purposes of statutory deadlines. *Id.* at 2054-55.  While the filing of a class complaint may put a defendant on notice as to the substance of the claims against it, it does not actually commence or "bring" the individual action.  If it did, there would be no need for a "tolling" rule at all, as the individual complaint would have been deemed filed on the same date the class action was commenced.  *Id.* at 2055.  To the extent Appellants raise a constructive-filing argument here, *see* Appellants' Br. at 14, we find it unavailing under *ANZ*.

[32]     138 S. Ct. 1800, 1804 (2018).

tolls the limitation period for *individual* claims because economy of litigation favors delaying those claims until after a class-certification denial. . . . With class claims, on the other hand, efficiency favors early assertion" so that the appropriate representatives can be named.[33]  It continued that "[t]he time to file individual actions once a class action ends is finite," but "the time for filing successive class suits, if tolling were allowed, could be limitless."[34]  The plaintiffs' view would have "allow[ed] the statute of limitations to be extended time and again; as each class [was] denied certification, a new named plaintiff could file a class complaint [to] resuscitate[] the litigation."[35]  The Court declined to construe the doctrine in this way, which would certainly not promote the efficiency of litigation contemplated by *American Pipe*.[36]

### B.

Though the Supreme Court has not yet done so, several other Courts of Appeals have considered the question before us.  Appellants ask us to join the view of the Second, Ninth, and Tenth Circuits, which have held that *American Pipe* tolls the limitations period for individual claims filed both before and after the certification stage.  As the Second Circuit explained:

> *American Pipe* rests [on] the notion that class members are

---

[33]  *Id.* at 1806-07 (emphasis added).

[34]  *Id.* at 1809.

[35]  *Id.* at 1808.

[36]  *Id.* at 1811.

15

treated as parties to the class action "until and unless they received notice thereof and chose not to continue." Because members of the asserted class are treated for limitations purposes as having instituted their own actions, at least so long as they continue to be members of the class, the limitations period does not run against them during that time. Once they cease to be members of the class—for instance, when they opt out or when the certification decision excludes them—the limitation period begins to run again on their claims. *Nothing in the Supreme Court decisions . . . suggests that the rule should be otherwise for a plaintiff who files an individual action before certification is resolved.*[37]

The Second Circuit further reasoned that though *American Pipe* was concerned with judicial economy, the doctrine was primarily "created to protect class members from being *forced*

---

[37]     *In re Worldcom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007) (quoting *American Pipe*, 414 U.S. at 551) (emphasis added and internal citations omitted).

to file individual suits in order to preserve their claims."[38]  The doctrine was not intended to prioritize convenience over its core equitable purpose.[39]

The Ninth and Tenth Circuits have followed the Second Circuit's lead.  In *In re Hanford Nuclear Reservation Litigation*, the Ninth Circuit held that pre-certification individual claims were subject to tolling, noting that class members "have a right to file at the time of their choosing[,] and denying tolling would diminish that right."[40]  The Tenth Circuit also saw no reason to deny tolling, as doing so would essentially "lock[] putative members into the class" until certification in some cases, which makes particularly little sense in light of how long it can take to reach that stage.[41]  In fact, the Tenth Circuit believed that restricting *American Pipe* in this way "ha[d] the potential to backfire" and could "compel individual class members to make a choice as the limitations period for their individual claim approaches: file an individual action now or sit tight for a class certification decision, no

---

[38]     *Id.* at 256.

[39]     *Id.* (explaining that the doctrine was "not meant to induce class members to forgo their right to sue individually").

[40]     534 F.3d 986, 1009 (9th Cir. 2008).

[41]     *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1233-34 (10th Cir. 2008) (noting the seven-year period between the filing of the class complaint and certification, and the potential costs associated with further delay).

matter how long it might take."[42]  The court anticipated that "[l]itigants in this bind might file placeholder suits rather than risk placing their individual actions on ice during a potentially prolonged class certification process."[43]

We are aware of only one federal appellate court that has held otherwise.[44]  In *Wyser-Pratte Management Company v. Telxon Corporation*, the Sixth Circuit held that the plaintiffs

---

[42]     *Id.* at 1234.

[43]     *Id.*

[44]     The parties appear to disagree as to whether the First Circuit has squarely reached this issue. *Glater v. Eli Lilly & Company* involved a personal-jurisdiction issue where the plaintiff was party to a class action and related individual suit. 712 F.2d 735 (1st Cir. 1983).  The plaintiff commenced her individual action before certification was resolved.  She argued that her citizenship in the individual case should have been determined as of the date the class action was filed and, in doing so, attempted to invoke *American Pipe* principles. *Id.* at 739.  In rejecting this theory, the First Circuit noted that "[e]ven assuming that *American Pipe* may have some relevance [in this context, it] . . . says nothing about [plaintiff's] ability to maintain a separate action while class certification is still pending.  The policies behind . . . *American Pipe* . . . would be disserved[] by guaranteeing a separate suit at the same time that a class action is ongoing." *Id.*  Though the First Circuit invoked *American Pipe* principles in dicta, its holding was confined to the personal-jurisdiction question before that court, and we find its reasoning unpersuasive in any event for the reasons described below.

had forfeited the benefit of *American Pipe* by filing individual claims before a certification decision had been made.[45] The court believed its conclusion was consistent with cases like *Crown*, which described *American Pipe* as tolling the limitations period "until class certification is denied."[46] This characterization arguably supports the conclusion that *American Pipe* tolling is contingent on a certification denial. The Sixth Circuit, which was the first to decide this issue, has since called its conclusion into question, noting that *Wyser-Pratte* "represents the minority rule" and that the court "ha[s] doubts about its holding."[47]

With this in mind, we now turn to the merits.

### III.

### A.

Appellants argue that the District Court misapplied *American Pipe*, and that class members should not be forced to

---

[45] 413 F.3d 553, 569 (6th Cir. 2005).

[46] *Id.* (quoting *Crown*, 462 U.S. at 354).

[47] *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 789 (6th Cir. 2016). *Wyser-Pratte* also relied somewhat heavily on the district court's reasoning in *In re Worldcom*, which the Second Circuit later reversed. *See supra* (discussing the Second Circuit's approach); *Wyser-Pratte*, 413 F.3d at 569 (citing *In re Worldcom, Inc. Sec. Litig.*, 294 F. Supp. 2d 431, 452 (S.D.N.Y. 2003), *rev'd*, 496 F.3d 245 (2d Cir. 2007)).

wait until after a certification decision to benefit from the doctrine. We agree, and adopt the reasoning of the Second, Ninth, and Tenth Circuits. *American Pipe* makes clear that the filing of a class action is the operative event that tolls the limitations period, and that once the period is tolled, it remains tolled for all putative members until they are no longer part of the class.[48] The Court has not held that anything further, such as a certification denial, is required to benefit from tolling. Like the majority of our sister circuits, we see no reason not to take the Supreme Court's words at face value.[49]

Tolling was primarily intended to benefit putative or unidentified members of the class, who are considered "mere passive beneficiaries of the action brought [on] their behalf."[50] Our conclusion that *American Pipe* is triggered automatically upon the filing of a class complaint is consistent with the well-founded principle that members need not actively monitor case

---

[48]     *American Pipe*, 414 U.S. at 553.

[49]     *See In re Worldcom*, 496 F.3d at 255 ("[T]he Supreme Court has repeatedly stated that 'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.' We see no reason not to take this statement at face value.") (quoting *Crown*, 462 U.S. at 353-54); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 611 (3d Cir. 2018) (noting that *American Pipe* "included no express restrictions in the broad language it used to describe the claims to which tolling would apply").

[50]     *American Pipe*, 414 U.S. at 552.

developments to benefit from Rule 23 protection.[51] The approach we adopt today is also consistent with the function of limitations periods generally. As the Supreme Court affirmed in both *American Pipe* and *Crown*, statutes of limitations are intended to prevent the "surprise" revival of old claims that plaintiffs failed to diligently pursue.[52] But surprise is not an issue in this context.[53] This is particularly so under the facts before us, where the Appellees were undisputedly aware of the substantive claims at issue for more than two years before the Individual Complaint was filed. Appellees will not be prejudiced if they are required to defend themselves against claims they have known about since 2016.[54]

We also conclude that denying tolling in this context, i.e., where members filed individual claims after the initial limitations period expired but before a certification decision, would serve no compelling purpose. In this posture, the District Court's rule would essentially "lock" putative

---

[51]    *See id.* ("Rule 23 is not designed to afford class action representation only to those who are active participants in or even aware of the proceedings.").

[52]    *See id.* at 554; *Crown*, 462 U.S. at 353.

[53]    *Crown*, 462 U.S. at 353.

[54]    As *Crown* makes clear, a defendant's desire not to defend against similar claims in multiple proceedings is not one that statutes of limitations are designed to protect. *Id.* Appellees' potential need to do so here does not constitute prejudice.

21

members into the class until after certification.[55]   Class members, even those intent on proceeding individually, would be forced to delay filing their claims indefinitely just to take advantage of *American Pipe*.  Such a requirement is potentially costly, and certainly inefficient.[56]  It can take years for a class action to reach the certification stage, and, in the meantime, members may "deem their own claims valuable enough" to pursue in an opt-out complaint, or otherwise decide that "class certification is doubtful."[57]  The approach we adopt today will allow members in either situation to promptly file their individual actions, rather than indefinitely delay the resolution of those claims for no good reason.

We disagree with the District Court that Appellants would not be prejudiced if their Individual Complaint is dismissed as untimely because there were technically other options available to them.[58]  Appellees do not dispute that *American Pipe* applies to individual claims filed after certification, and they suggest that Appellants could have

---

[55]    *State Farm*, 540 F.3d at 1233 ("[L]ocking putative class members into the class until the class certification decision makes little sense and could adversely affect certain individuals.").

[56]    *See id.*

[57]    *Id.*

[58]    *See Nw. Mut.*, 2019 WL 4278929, at *10 ("Given that Northwestern Mutual's claims would be timely if [it] had pursued a different course of action, the Court cannot conclude that failing to expand *American Pipe* in this instance would result in an injustice.").

22

simply waited until that point if they wanted to avoid any tolling and timeliness issues. But this approach makes little sense for the reasons we have already articulated—it would leave members who decide to proceed individually *after* the limitations period would have normally run but *before* certification in limbo for an indefinite period of time.[59] Appellees also suggest that Appellants could have assumed tolling did not apply and brought the Individual Complaint within the initial two-year period to be safe. But the doctrine would serve no purpose if members were expected to file their individual claims within the first two years regardless. In fact, suggesting that members should do so—just to avoid timeliness problems—tends to encourage the duplicative "just in case" litigation that *American Pipe* seeks to prevent.

**B.**

Appellees respond that we should not be swayed by the Second, Ninth, and Tenth Circuits' approach because those decisions pre-date *ANZ* and *China Agritech*. We recognize that the Supreme Court's recent jurisprudence tends to underscore the importance of judicial economy, but we cannot construe the doctrine in a way that would undermine its primary purpose— to protect the individual rights of putative members. While *American Pipe* was established in part to avoid duplicative filings, it is, at its core, an equitable doctrine.[60] That doctrine

---

[59] This approach is especially untenable because of the competing repose period in this case, as discussed *infra*.

[60] *See ANZ*, 137 S. Ct. at 2052 ("The balance of the Court's reasoning [in *American Pipe*] . . . reveals a rule based on traditional equitable powers, designed to modify a statutory

23

was "created to protect class members from being *forced* to file individual suits in order to preserve their claims."[61] The District Court's view would surely cause at least certain members to forfeit their individual rights, simply (and ironically) because they filed too early.[62]

We have previously recognized that while this Court remains "concerned with judicial economy . . . it need not be

time bar where its rigid application would create injustice"); *see also In re Worldcom*, 496 F.3d at 256 ("The district court may be correct that its conception of the *American Pipe* rule would reduce the number of individual suits filed by class members. But this is beside the point. While reduction in the number of suits may be an incidental benefit of the *American Pipe* doctrine, it was not the purpose of *American Pipe* either to reduce the number of suits filed, or to force individual plaintiffs to make an early decision whether to proceed by individual suit or rely on a class representative.").

[61] *In re Worldcom*, 496 F.3d at 256 (emphasis in original).

[62] *See id.* at 255 ("As the Supreme Court has repeatedly emphasized, the initiation of a class action puts the defendants on notice of the claims against them. A defendant is no less on notice when putative class members file individual suits before certification. . . . [T]he same is certainly true of class members who file individual suits before the court decides certification") (internal citation omitted); *see also In re Hanford*, 534 F.3d at 1009 (explaining that plaintiffs "have a right to file at the time of their choosing and denying tolling would diminish that right").

24

achieved at the expense of litigants for whom the *American Pipe* tolling rule was designed."[63]   This observation rings equally true here, and we are not convinced that efficiency concerns should trump the doctrine's core equitable purpose.[64]

---

[63]   *McKowan*, 295 F.3d at 389.

[64]   In theory, extending *American Pipe* to pre-certification individual claims may lead to an increase in litigation. *See Crown*, 462 U.S. at 353 (recognizing the risk of increased litigation but noting that this was not an interest limitations periods are designed to protect); *see also ANZ*, 137 S. Ct. at 2054 ("District Courts, furthermore, have ample means and methods to administer their dockets and to ensure that any additional filings proceed in an orderly fashion."). But this risk may not be as high as Appellees suggest. Common sense tells us that when a member determines his or her claims are substantially more valuable than those of the class, he or she is likely to pursue an individual complaint no matter what. *See State Farm*, 540 F.3d at 1233 (members may decide to proceed individually because they "deem their own claims valuable enough"). Members who file individual claims before certification are likely the same members who—if forced to wait until after certification—would have opted out regardless. *See id.* ("[M]ost litigants with claims valuable enough to pursue separately will likely have filed their individual claims before the end of their own limitations period. As such, the group that would file individual suits during the window at issue here is likely to approximate in number the group that would later opt-out if a class is certified or file individual suits if not."). Our decision will not prompt an influx of additional

And though *China Agritech* describes "efficiency and economy of litigation" as the "watchwords of *American Pipe*,"[65] that decision does not cast any doubt on the approach we adopt today. There, the Supreme Court declined to extend *American Pipe* in a way that would have allowed for the constant revival of otherwise untimely *class* claims.[66] Our conclusion that *American Pipe* tolls the limitations period governing pre-certification *individual* claims does not pose the risk of endless tolling.[67]

Appellees also suggest that this Court's decision in *Weitzner* is inconsistent with the Second Circuit's approach. *Weitzner* did not involve the issue that is before us, but we observed in passing that "*American Pipe* is designed to protect individual claims filed after the denial of class certification."[68] We recognize that *American Pipe* tolling may have been anticipated to apply most commonly in the post-certification

---

suits so much as it will simply avoid an unnecessarily delayed filing of opt-out claims.

[65]     138 S. Ct. at 1811.

[66]     *Id*. at 1808.

[67]     *See id.* at 1809. Nor does the Court's decision in *ANZ* compel a different result. In *ANZ*, the Court declined to extend *American Pipe* to statutes of repose. 137 S. Ct. at 2051. Repose periods are fundamentally different from statutes of limitation like the one before us. *Id.* The *ANZ* decision also rejected a "constructive filing" theory that is not dispositive in this case. *Id.* at 2054-55.

[68]     *Weitzner*, 909 F.3d at 610.

context, and that this idea is accordingly reflected in the relevant case law.[69] But nothing in our precedent suggests that *American Pipe* applies *exclusively* to post-certification claims. What we can discern from the existing jurisprudence, however, is that *American Pipe* tolling begins, for all putative members, when the class action is commenced. Our decision reflects a straightforward application of this principle.

## C.

Finally, we also find the District Court's holding untenable because it would lead to counterintuitive results. Should we affirm that decision, individual claims filed well *before* certification could be dismissed as untimely, while other claims filed at a much later date would be allowed to proceed. Class members who were "contemplating opting out and filing their own lawsuits would be penalized for giving the defendants and the Court earlier notice."[70] We have sought to avoid similar outcomes in other contexts and see no compelling reason not to do so here.[71]

---

[69]    *See, e.g.*, *China Agritech*, 138 S. Ct. at 1804.

[70]    *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. 15-6480, 2019 WL 130535, at *8 (E.D. Pa. Jan. 8, 2019).

[71]    *See Wallach v. Eaton Corp.*, 837 F.3d 356, 374 (3d Cir. 2016) (explaining, in the presumption-of-timeliness context, that "if the presumption of timeliness applied only to certified classes, . . . *motions to intervene brought prior to class certification might be deemed untimely, even though those same motions would be timely if brought years later, after a class was certified.* The illogic of such result and the goals of

27

Appellees respond that "the potential for [anomalous] results exists under any equitable tolling doctrine," and so we need not worry much about it in this scenario.[72] Even if that were true, the issue is compounded by the competing statute of repose in this case. As evidenced by the timeline before us, putative members may not become aware of any wrongdoing until after a class complaint is filed or the fraud is otherwise made public.[73] But by that point, the repose period is likely to have been already running in the background for some time.[74] In the event a certification ruling is made more than five years after the wrongdoing took place, some members would be forced to file individually before certification regardless. If they did, however, the District Court's rule would likely require dismissal of those claims under the *limitations* period because they would have been filed before certification. But if

efficiency . . . emphasized . . . in *American Pipe* militate that we extend the presumption of timeliness . . . to the pre-certification context.") (emphasis added); *McKowan*, 295 F.3d at 389 (explaining that there was "no good reason" why the class claims of intervening members "should not be tolled where the district court had not yet reached the issue of the validity of the class").

[72]     Appellees' Br. at 7.

[73]     *See ANZ*, 137 S. Ct. at 2049 (noting that repose periods begin to run when the wrongdoing occurs); *see also* Br. of *Amicus Curiae* Fir Tree Capital Management LP in Support of Plaintiffs-Appellants at 9 ("Amicus Br.").

[74]     For example, in this case, the first fraudulent misrepresentation is alleged to have been made in 2013, but the Class Complaint was not filed until 2016.

those members waited until after certification to take advantage of *American Pipe*, their claims could be barred by the *repose* period. We cannot imagine that *American Pipe* was intended to force plaintiffs into this sort of bind.[75]

This issue is perhaps best illustrated by example. Imagine that a company makes a fraudulent statement in 2020. The fraud is not uncovered until 2022, and a class complaint is filed the same year.[76] As here, the class claims (and corresponding individual claims) are governed by a two-year limitations period and a five-year repose period, whichever comes first. By 2024, the class action is progressing, but there has been no certification ruling. Class members are comforted by the fact that their individual claims are covered by *American Pipe* and see no reason to file individually at that time. But by early 2025, there is still no certification ruling, and anxious members cognizant of the repose period decide to file their own complaints and proceed individually instead. A class is finally certified in 2026. In this scenario, the District Court's rule would require us to find the individual complaints untimely under the *limitations* period because they would have been

---

[75] Nothing in *ANZ* suggests otherwise. Though the Supreme Court declined to extend tolling to statutes of repose, it did not consider the interplay of repose and limitations periods in this context or the problems likely to arise. *See ANZ*, 137 S. Ct. at 2049-54.

[76] For purposes of this illustration, we assume the statute of limitations would have, in the absence of tolling, started to run upon the filing of the class complaint. Appellees argue that this is the case here, though we need not decide that issue today.

29

filed pre-certification and therefore not subject to tolling. But if those members waited to file until after certification to take advantage of *American Pipe*, the *repose* period would have already expired. Members in this position would be without any individual recourse, which is precisely the result *American Pipe* seeks to avoid.

Appellees downplay the repose issue by pointing out that it will not be a universal problem. Not every case involves a competing repose period, but that does not change the fact that the one before us does, as will any class action bringing similar securities fraud claims. We also find the analysis of the amicus, which points to 92 recent class actions where certification was not resolved within five years of the beginning class period, persuasive on this point.[77] Under the District Court's rule, any member whose claims are subject to a repose period may very well have no choice but to file within the initial two years to avoid forfeiting their individual rights. The tolling doctrine would serve no purpose in this context,

---

[77] The issue of whether the repose period has expired is not before us today. But the timing in this case illustrates the problems that may arise in similar scenarios. Here, the first misrepresentation alleged in the Class Complaint was made in January 2013, but a class was not certified until May 2020. If Appellants had waited until after certification to file their Individual Complaint with the hopes of benefitting from *American Pipe* tolling, their claims could have been barred by the repose period, and they would have been "forced to participate in the class." Amicus Br. at 10.

and we are not convinced that the Supreme Court intended or envisioned such a result.[78]

## IV.

For these reasons, we conclude that the statutes of limitations governing the claims raised in the Individual Complaint are subject to *American Pipe* tolling. Because we hold that the limitations period has been tolled, we need not decide whether the Individual Complaint was timely in the absence of tolling.

We will vacate the District Court's order and remand the case for further proceedings consistent with this opinion.

---

[78] Even where there is a competing repose period at issue, members will generally always have the option to proceed as part of the class or file their individual claims within the initial limitations period without relying on tolling. But *American Pipe* was intended to protect the individual rights of members while encouraging, but not forcing, class participation. *See American Pipe*, 414 U.S. at 551-53; *Crown*, 462 U.S. at 351-53 (noting that Rule 23 encourages class participation but that members must still have a "meaningful" right to opt out and pursue individual claims, which justifies the tolling rule) (citing *Eisen*, 417 U.S. at 176 n.13). And for the same reasons we have already expressed, it makes little sense to establish a tolling rule if members are encouraged to file their individual claims within the initial two-year period regardless, under the assumption that tolling may not apply.