**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1119
_____

DAVID BEASLEY,
Appellant

v.

WILLIAM H. HOWARD
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1:19-cv-11058)
District Judge:  Honorable Noel L. Hillman
_____

Argued:  November 13, 2020
_____

Before:  CHAGARES, GREENAWAY, JR., and NYGAARD,
<u>Circuit</u> <u>Judges</u>

(Opinion Filed:  September 17, 2021)

Martin B. Schwimmer [ARGUED]
Leason Ellis

1 Barker Avenue
5th Floor
White Plains, NY 10601

John Welch
Wolf Greenfield & Sacks
600 Atlantic Avenue
Boston, MA 02210

      Counsel for Appellant

Moshe D. Lapin [ARGUED]
Suite 840
300 East Lombard Street
Baltimore, MD 21202

      Counsel for Appellee

_____

OPINION OF THE COURT
_____

CHAGARES, Circuit Judge.

Musicians David Beasley and William Howard are embroiled in a long-running dispute over the rights to the band name "Ebonys." Beasley filed two petitions before the Trademark Trial and Appeal Board ("TTAB") to cancel Howard's registered THE EBONYS mark. The TTAB dismissed them both. Beasley then filed a lawsuit against Howard for trademark infringement in federal court. The

District Court relied on claim preclusion to dismiss Beasley's complaint. Beasley appeals, so we now consider whether trademark cancellation proceedings before the TTAB have claim preclusive effect against trademark infringement lawsuits in federal district courts. We hold that they do not. The TTAB's limited jurisdiction does not allow trademark owners to pursue infringement actions or the full scope of infringement remedies in proceedings before it. Because the judgments of tribunals with limited jurisdiction have limited preclusive effect, we will reverse and remand in part the District Court's order so that the District Court may determine the scope and plausibility of Beasley's claims. But we will affirm the District Court's order to the extent it dismisses any claim that Howard defrauded the U.S. Patent & Trademark Office ("PTO").

I.

In 1969, David Beasley founded a band named "The Ebonys" in Camden, New Jersey. The Ebonys were one of many bands that helped create the "Philadelphia Sound" — a style of rhythm and blues music centered around the Philadelphia International Records label, and which incorporated elements of soul, funk, and disco. See generally Jim Morrison, Forty Years of Philadelphia Sound, Smithsonian Mag. (Feb. 18, 2011), https://www.smithsonianmag.com/arts-culture/forty-years-of-philadelphia-sound-326818/ (documenting the genre's history). The Ebonys achieved some commercial success in the 1970s, but never reached the notoriety that similar artists such as the O'Jays or the Blue Notes achieved. The Ebonys's popularity faded as the decade

progressed, but Beasley alleges that they nonetheless have performed continuously since their formation.[1]

The 1990s and 2000s saw fresh developments for the Ebonys. William Howard joined the band in the mid-1990s and Beasley obtained a New Jersey state service mark for THE EBONYS in 1997. Beasley and his bandmates performed with Howard for several years thereafter.

But Beasley and Howard would soon part ways. Each artist made his own claim to the Ebonys name, and in 2012, Howard registered THE EBONYS as a federal trademark with the PTO. See THE EBONYS, Registration No. 4,170,469 (the "'469 mark"). Beasley alleges that since Howard registered the '469 mark, Howard's registration has interfered — and continues to interfere — with his business. Beasley claims that he has not been able to register a band website that uses "the Ebonys" in its domain name, Howard has kept concert venues from booking Beasley's performances, Howard has tried to collect royalties from Beasley's recordings, and Howard has claimed to be the Ebonys's true founder.

Beasley filed a petition with the TTAB to cancel the '469 mark in 2013, contending that Howard had defrauded the PTO. The 2013 petition recounted the Ebonys's 1969 founding, the New Jersey service mark he had obtained for the

---

[1] Howard contends that the Ebonys stopped performing between 1978 and 1997. But "[b]ecause this is an appeal from a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), the facts in this section are as alleged by [Beasley]." Aly v. Valeant Pharms. Int'l Inc., 1 F.4th 168, 170 n.5 (3d Cir. 2021).

4

group, Howard's arrival and departure from the band, and the claim that Beasley continued to operate under the Ebonys name. The TTAB dismissed the petition the following year. It found that for all the evidence Beasley submitted, Beasley failed to show that Howard defrauded the PTO.

Beasley filed a second petition with the TTAB in 2017. His 2017 petition again asserted that Howard had committed fraud on the PTO, but also requested that the PTO cancel the '469 mark because it could be confused with Beasley's THE EBONY'S mark.

The TTAB dismissed the 2017 petition. It did so on the ground of claim preclusion, reasoning that Beasley's 2017 fraud claim rested on the same facts as his 2013 one and that Beasley forwent the opportunity to assert the likelihood-of-confusion claim in his 2013 petition, because it also rested on the same transactional facts as his 2013 fraud claim. Beasley did not appeal either petition's dismissal.

Unsatisfied with his results at the TTAB and proceeding pro se, Beasley filed the lawsuit before us now in April 2019. Beasley's complaint once again recounted the band's history and his acrimonious split with Howard. He asked that the District Court "vacate trademark ownership of" the '469 mark, award him monetary damages for losses from being unable to market his band, and allow him to register his own EBONYS trademark with the PTO. Appendix ("App.") 28.

The District Court applied the liberal rules of construction we require for a pro se complaint to understand Beasley to assert a claim under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which, inter alia, protects

5

unregistered and state law trademarks against infringement. Cf. Lanham Act § 32, 15 U.S.C. § 1114 (protecting registered trademarks from infringement). Howard moved to dismiss Beasley's complaint on the grounds of claim and issue preclusion. The District Court granted the motion. It reasoned that claim preclusion barred Beasley from asserting the claim because it turned on "facts and legal theories [that] were all actually litigated in the" 2017 petition, and Beasley could have raised any priority of use arguments in his 2013 petition. App. 17-18. The District Court further concluded that claim preclusion applied even though Beasley sought a damages remedy he did not pursue at the TTAB, and accordingly dismissed the complaint without reaching the merits of the other issues the parties raised. Beasley timely appealed.

II.

The District Court had federal subject matter jurisdiction under 28 U.S.C. § 1331 and section 39 of the Lanham Act, 15 U.S.C. § 1121(a). We have jurisdiction to review the District Court's final decision under 28 U.S.C. § 1291.

We exercise plenary review over the District Court's dismissal of Beasley's complaint and may affirm on any ground supported by the record. Watters v. Bd. of Sch. Dirs., 975 F.3d 406, 412 (3d Cir. 2020). We accept as true all factual matters Beasley alleges, but his complaint cannot survive unless the facts it recites are enough to state plausible grounds for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim that relies just on "conclusory statements," or on "threadbare recitals of the elements of a cause of action" without supporting factual allegations, does not establish

6

plausible grounds for relief.  Fischbein v. Olson Rsch. Grp., Inc., 959 F.3d 559, 561 (3d Cir. 2020) (quoting City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878-79 (3d Cir. 2018)).  We liberally construe pro se filings like Beasley's.  Jones v. Unknown Dep't of Corr. Bus Driver & Transp. Crew, 944 F.3d 478, 483 (3d Cir. 2019). Notwithstanding the rule of liberal construction, a pro se complaint may not survive dismissal if its factual allegations do not meet Iqbal's basic plausibility standard.  Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

III.

Beasley limits this appeal to whether the District Court properly dismissed his section 43(a) infringement claim, so its central issue is whether Beasley's prior losses in cancellation proceedings before the TTAB preclude his section 43(a) claim before the District Court.  We hold that they do not.  Despite the factual similarities between Beasley's petitions for cancellation and the complaint he filed in the District Court, the jurisdictional limits on the TTAB that accompany its role as the primary venue for narrow questions of trademark registration ensure that proceedings before it do not carry claim preclusive effect against subsequent Article III infringement proceedings under section 43(a).  We first address claim preclusion's general principles, then examine their application to this case, and finally consider the other arguments Howard raises in favor of affirmance.

A.

Claim preclusion — which some courts and commentators also call res judicata — protects defendants

7

from the risk of "'repetitious suits involving the same cause of action' once 'a court of competent jurisdiction has entered a final judgment on the merits.'" United States v. Tohono O'Odham Nation, 563 U.S. 307, 315 (2011) (quoting Comm'r v. Sunnen, 333 U.S. 591, 597 (1948) (quotation marks omitted)); see also Brownback v. King, 141 S. Ct. 740, 747 n.3 (2021) ("The terms res judicata and claim preclusion often are used interchangeably."). The doctrine does so by "prevent[ing] parties from raising issues that could have been raised and decided in a prior action — even if they were not actually litigated." Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc., 140 S. Ct. 1589, 1594 (2020). The prior judgment's preclusive effect then extends not only to the claims that the plaintiff brought in the first action, but also to any claims the plaintiff could have asserted in the previous lawsuit. See In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008). Claim preclusion similarly reaches theories of recovery: a plaintiff who asserts a different theory of recovery in a separate lawsuit cannot avoid claim preclusion when the events underlying the two suits are essentially the same. See United States v. Athlone Indus., Inc., 746 F.2d 977, 984 (3d Cir. 1984).

Recognizing the severity of claim preclusion's consequences, we apply the doctrine with care and only in appropriate circumstances. See, e.g., Papera v. Pa. Quarried Bluestone Co., 948 F.3d 607, 611 (3d Cir. 2020) (construing ambiguities in prior dismissal against claim preclusion). When a defendant seeks to invoke claim preclusion based on a federal tribunal's judgment, we require "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of

8

action." In re Healthcare Real Est. Partners, LLC, 941 F.3d 64, 72 (3d Cir. 2019) (quoting Mullarkey, 536 F.3d at 225).[2]

Claim preclusion also has limits. A predicate for the doctrine is that "a court of competent jurisdiction ha[ve] entered a final judgment on the merits" in the first action. Tohono O'Odham, 563 U.S. at 315 (quoting Sunnen, 333 U.S. at 597). The corollary to this prerequisite is that claim preclusion "generally does not apply where '[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy because of the limitations on the subject matter jurisdiction of the courts. . . .'" Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 382 (1985) (quoting Restatement (Second) of Judgments § 26(1)(c) (Am. L. Inst. 1982)). But cf. Humphrey v. Tharaldson Enters., Inc., 95 F.3d 624, 626 (7th Cir. 1996) ("[A]s long as there existed a tribunal before which [plaintiff] could have consolidated all his claims in a single lawsuit, the principles of claim preclusion bar his current federal suit, even though he could not have raised the federal claims before the [state administrative agency]."). This limit to claim preclusion protects a plaintiff's right to bring claims that he "was not at liberty to assert" in a prior forum of limited jurisdiction. Est. of Roman v. City of Newark, 914 F.3d 789, 805 (3d Cir. 2019). Whether claim preclusion bars Beasley's lawsuit depends on whether this limitation applies here.

B.

---

[2] The TTAB's status as an administrative tribunal rather than as an Article III court does not diminish its judgments' preclusive effect. See B & B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. 138, 151-53 (2015).

1.

There is no dispute that Beasley previously filed petitions before the TTAB against Howard to cancel the '469 mark and that the TTAB rendered a final judgment on the merits against Beasley.  And although his precise theory of relief is somewhat unclear on this record, there is also no dispute that Beasley now seeks — at minimum — damages against Howard for trademark infringement under section 43(a) of the Lanham Act.  We therefore must consider whether Beasley's claim is "of the type 'that could have been brought'" in his TTAB petitions.  Roman, 914 F.3d at 804 (quoting Duhaney v. Att'y Gen., 621 F.3d 340, 347 (3d Cir. 2010)).

We begin with the TTAB's jurisdiction.  The TTAB is not a general-purpose tribunal for trademark disputes.  Instead, it has limited jurisdiction "to determine only the right to register" a trademark and cannot "decide broader questions of infringement or unfair competition."  FirstHealth of Carolinas, Inc. v. CareFirst of Md., Inc., 479 F.3d 825, 828 (Fed. Cir. 2007) (citation omitted); see also Conolty v. Conolty O'Connor NYC LLC, 111 U.S.P.Q.2d 1302, at *11 (T.T.A.B. 2014) ("The Board's jurisdiction is strictly limited to determining the right to register." (quotation marks omitted)); U.S. Patent & Trademark Office, U.S. Dep't of Commerce, Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 102.01 (2021), https://tmep.uspto.gov/RDMS/TBMP/current#endnote-p-7ba818da-61d4-4980-be98-6ce79d4ba93e ("The Board is not authorized to determine the right to use").  With that limited jurisdiction comes "no authority to determine . . . damages or injunctive relief."  Gen. Mills, Inc. v. Fage Dairy Processing

10

Indus. S.A., 100 U.S.P.Q.2d 1584, at *3 (T.T.A.B. 2011), relief set aside to effect settlement sub nom. Gen. Mills, Inc. v. Fage Lux. S.A.R.L., 110 U.S.P.Q.2d 1679 (T.T.A.B. 2014); see also Bd. of Trs. of the Univ. of Ala. v. Pitts, 107 U.S.P.Q.2d 2001, at *20 (T.T.A.B. 2013) ("[T]he Board can do nothing to prevent parties from using a mark in a certain manner."). The TTAB therefore properly considers only narrow questions and grants only narrow remedies: it hears challenges litigants pose as to whether a trademark meets the Lanham Act's criteria for registration, and cannot dispense relief beyond whether or how the PTO registers a mark.[3]

But while the TTAB's jurisdiction is narrow, the statutory provision under which Beasley sues is broad. Section 43(a)(1) creates liability for the deceptive "use[] in commerce" of a mark that "is likely to cause confusion" as to the "affiliation, . . . association[,] . . . origin, sponsorship, or approval" of a defendant's products, as well as for deceptive advertising practices. 15 U.S.C. § 1125(a)(1). The provision extends far further than the statutorily prescribed grounds on which the TTAB can cancel a mark under section 14 of the Lanham Act, 15 U.S.C. § 1064.[4] Even insofar as the Lanham

---

[3] The TTAB has jurisdiction over opposition proceedings to stop it from issuing a registration, cancellation proceedings to discontinue a registration, proceedings to determine who owns a registration, and appeals from ex parte denials of registration. TBMP § 102.02.

[4] These include if a registered mark "becomes the generic name for the goods or services . . . for which it is registered, or is functional, or has been abandoned, or its registration was obtained fraudulently or contrary to the provisions of [Lanham Act § 2, 15 U.S.C. § 1052(a)-(c)] . . . or if the registered mark

11

Act bars the registration of trademarks which "so resemble[]" marks previously in use so as to cause confusion, see Lanham Act § 2(d), 15 U.S.C. § 1052(d), the cancellation provisions of the Lanham Act give no basis for relief on the ground of how an infringer uses a trademark in practice. See B & B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. 138, 145 (2015) ("In infringement litigation, the district court considers the full range of a mark's usages, not just those in the application."). As a result, the TTAB could never have granted Beasley the damages he now seeks.

We therefore hold that a limit to claim preclusion applies to cases, like this one, where a plaintiff seeks damages or an injunction in a section 43(a) infringement action after pursuing a cancellation claim before the TTAB. A section 43(a)(1)(A) infringement or "false association" claim requires a plaintiff to prove, inter alia, that "the defendant's use of [a] mark[] to identify goods or services is likely to create confusion concerning the origin of the goods or services." Parks LLC v. Tyson Foods, Inc., 863 F.3d 220, 230 (3d Cir. 2017) (quoting Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.3d 277, 291 (3d Cir. 1991)).[5] Because the TTAB has no jurisdiction to consider whether an infringer's use of a mark damages a petitioner seeking cancellation, and in turn cannot

is being used . . . to misrepresent the source of the goods or services" with which it is used. Lanham Act § 14(3), 15 U.S.C. § 1064(3).

[5] A section 43(a)(1)(B) false advertising claim turns on whether a defendant "misrepresents the nature, characteristics, qualities, or geographic origin" of a product. Parks, 863 F.3d at 226 (quoting 15 U.S.C. § 1125(a)(1)(B)). These are also matters outside the TTAB's jurisdiction.

12

award any remedy beyond cancellation for the injuries a petitioner has suffered, see FirstHealth, 479 F.3d at 828; Pitts, 107 U.S.P.Q.2d 2001 at *20, a section 43(a) claim is not one that could have been brought in a TTAB cancellation proceeding.

We join two of our sister Courts of Appeals in recognizing the limited preclusive effect of TTAB proceedings. The Court of Appeals for the Ninth Circuit addressed similar facts to those before us in V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC, 946 F.3d 542 (9th Cir. 2019). There, a common law trademark plaintiff repeatedly petitioned the TTAB to oppose and then cancel the registration of what it alleged were invalid marks. Id. at 544. With no success before the TTAB, the owner then filed a section 43(a) infringement claim in federal district court, where the defendant successfully obtained a dismissal on the ground of claim preclusion. Id. at 545. The Court of Appeals for the Ninth Circuit held — as do we — that claim preclusion did not apply, noting that "it would be unfair to preclude [the plaintiff] from litigating [its] claims and seeking relief when barriers existed that prevented it from doing so in the first action." Id. at 546.

The Court of Appeals for the Second Circuit similarly recognized that the scope of claims and relief available in the TTAB limits the claim preclusive effect of that body's judgments, noting in Jim Beam Brands Co. v. Beamish & Crawford Ltd. that "[claim preclusion] would not apply" to a plaintiff's claims "[i]f an injunction against trademark infringement was not available" at the TTAB. 937 F.2d 729, 736 (2d Cir. 1991). Our holding here reaches the same conclusion and helps to maintain nationwide uniformity in how

federal Article III courts treat TTAB judgments. Because the TTAB's jurisdictional limits do not allow it to consider the full range of facts or grant the full range of remedies relevant to violations of section 43(a), cancellation proceedings before it do not have claim preclusive effect against section 43(a) lawsuits in federal district court.[6]

2.

In reaching this result, we are unpersuaded by Howard's argument that Beasley could and should have "pursu[ed] his actions against Howard in district court in the first instance." Howard Br. 42. Howard's understanding of claim preclusion's "could have been raised" requirement, CoreStates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187, 194 (3d Cir. 1999), would oblige a plaintiff wishing to avoid claim preclusion not only to assert every available claim, but also to choose the forum with the broadest jurisdiction in which to do so.

We disagree with Howard's argument. Giving TTAB cancellation proceedings claim preclusive effect against

---

[6] Because we conclude that claim preclusion does not apply, we need not determine whether Beasley's section 43(a) claim fits best as an "infringement of an unregistered mark, passing off" claim or false association claim under section 43(a)(1)(A), or false advertising under section 43(a)(1)(B) — and therefore the extent of any substantive daylight between Beasley's TTAB and District Court claims. Beasley Br. 15; cf. V.V.V., 946 F.3d at 545 (assuming, without deciding, identity of claims). We acknowledge that the sparseness of Beasley's complaint made these issues difficult to untangle, especially without the benefit of counseled briefing on Beasley's behalf.

14

district court infringement suits would be inconsistent with the federal statutory scheme of the Lanham Act and the TTAB's role as the principal forum for cancellation actions.  See Restatement (Second) of Judgments § 26 cmts e-f.  Assertions of claim preclusion are "readily denied when the remedies sought in the second action could not have been sought in the first action, so long as there was good reason to maintain the first action in a court or in a form of proceeding that could not afford full relief."  18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 4412 (3d ed. 2021); see, e.g., Frazier v. King, 873 F.2d 820, 824 (5th Cir. 1989) (denying claim preclusion in § 1983 case where plaintiff had previously pursued state law remedy in administrative forum of limited jurisdiction to avoid "encourag[ing] plaintiffs to bypass administrative proceedings in order to preserve their claims under § 1983").

Such "good reason" exists here.  Inter partes proceedings before the TTAB provide an expedited vehicle to protect both the petitioner and the public from an invalid trademark regardless of how that mark is used, and require more limited discovery and proof than do suits for infringement.  See 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §§ 20:1, 20:40 (5th ed. 2021) (describing cancellation as a "second backstop" to the PTO's ex parte review of trademark applications); see also B & B, 575 U.S. at 145.  If a petitioner forsook any future infringement claims against the opposing party by pursuing an opposition or cancellation action before the TTAB, that loss of rights would "negate and short-circuit the power of the [TTAB] to consider such cases."  5 McCarthy, supra, § 30:110; see also Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc., 744 F.3d 595, 599 (9th Cir. 2014) (interpreting district

15

court jurisdiction so as to "preserve the use of actions before the [TTAB] as the primary vehicle for cancellation").

We thus have made clear that even though a federal district court "has concurrent power to order cancellation," "a petition to the [TTAB] is the primary means of securing a cancellation." Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 873 (3d Cir. 1992). To this end, a district court's power to grant cancellation to a plaintiff is remedial, "rather than an independent basis for federal jurisdiction." Airs Aromatics, 744 F.3d at 599 (quoting Nike, Inc. v. Already, LLC, 663 F.3d 89, 98 (2d Cir. 2011)); see also 2 Anne Gilson Lalonde, Gilson on Trademarks § 4.10[1] (2021) (describing court power over registration as "a remedial provision"). Because the Lanham Act's cancellation provision, section 14(c), does not create an independent basis for a plaintiff to sue for cancellation in federal district court, see Windsurfing Int'l Inc. v. AMF Inc., 828 F.2d 755, 758 (Fed. Cir. 1987), a plaintiff like Beasley could not have selected the District Court as a forum to raise any invalidity arguments against Howard unless he could have maintained a trademark infringement claim in the District Court at the same time.[7] Granting claim preclusive

---

[7] We have also been reluctant to apply claim preclusion where it is not established that the claims in a plaintiff's second lawsuit "had accrued . . . or were even justiciable" at the time of the first. Mullarkey, 536 F.3d at 230. Beasley's complaint suggests this possibility insofar as it seeks relief for Howard's "lying to audiences" and "send[ing] notice and contact[ing] other venues not to hire [him]" in the present tense, App. 28, but is not a model of clarity. Because we decide this appeal on the basis of claim preclusion's limitation, we leave it to the

effect to TTAB proceedings against subsequent infringement suits would penalize trademark holders who promptly oppose or seek to cancel an invalid mark, rather than delay litigation until that party could assert all possible causes of action in the District Court. A rule encouraging such delay would moreover stand in tension with sections 14(1) and 15 of the Lanham Act, 15 U.S.C. §§ 1064(1), 1065, which urge prompt opposition and cancellation petitions by providing that trademark registrations over five years old are generally incontestable and cannot be challenged.

We will not apply claim preclusion in a way that encourages litigants to sit on their claims and undermines the Lanham Act's adjudicative mechanisms. As a result, we reject Howard's invitation to force plaintiffs to choose between expeditiously petitioning the TTAB and vindicating eventual infringement claims in federal court. We therefore will not apply claim preclusion to Beasley's infringement claims here.

C.

Howard raises the specter of "relitigation of claims" that would "substantially increase the likelihood of inconsistent decisions[,] . . . undercut reliance on judicial action[,] and stifle investment in brand promotion." Howard Br. 42. But the application of the doctrine of issue preclusion will resolve any concerns about relitigation and finality here. See V.V.V., 946 F.3d at 546-47 ("To the extent a party before the TTAB litigates an issue that also arises in infringement proceedings

---

District Court on remand to make any necessary determination of when Beasley's claims accrued.

before a federal district court, issue preclusion would bar relitigation.").

Federal issue preclusion is a narrower doctrine than claim preclusion and prevents "a party from relitigating an issue actually decided in a prior case and necessary to the judgment." Lucky Brand Dungarees, 140 S. Ct. at 1594. We apply issue preclusion from TTAB proceedings to section 43(a) suits where "an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment . . . in a subsequent action between the parties, whether on the same or a different claim." B & B, 575 U.S. at 148 (quoting Restatement (Second) of Judgments § 27); see also Karns v. Shanahan, 879 F.3d 504, 514 n.3 (3d Cir. 2018) ("The elements for [issue preclusion] are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'" (quoting Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 342 F.3d 242, 252 (3d Cir. 2003))).

Beasley concedes in his briefing that issue preclusion applies to any fraud claim he asserted below. Beasley wisely limited his challenge on appeal only to the District Court's dismissal of his section 43(a) claim, and we agree that issue preclusion bars any claim in Beasley's complaint seeking to cancel Howard's trademark on the ground of fraud. As a result, we will affirm the District Court's order to the extent it dismissed any claim that Howard defrauded the PTO.[8]

---

[8] Issue preclusion accordingly bars any fraud-based attempt at cancellation that Beasley made before the District Court.

We also are unpersuaded by Howard's argument that we should affirm the District Court's judgment on the alternate ground that his right to use the '469 mark is incontestable. Section 15 of the Lanham Act, 15 U.S.C. § 1065, makes clear that incontestability only applies "except to the extent, if any, to which the use of a [registered mark] infringes a valid" state or common law trademark right "continuing from a date prior to the date of registration." Hence, "[e]ven if a junior user's mark has attained incontestable status, such status does not cut off the rights of [the] senior user." Marshak v. Treadwell, 240 F.3d 184, 198 n.10 (3d Cir. 2001). Because Beasley alleges a common or state law right in the Ebonys name predating Howard's registration of the '469 mark, Howard's rights are not incontestable against Beasley's preexisting rights in the Ebonys name. Cf. Cuban Cigar Brands N.V. v. Upmann Int'l, Inc., 457 F. Supp. 1090, 1100 (S.D.N.Y. 1978) (concluding that infringement defendant could not invoke incontestability against plaintiff owning senior common law mark), aff'd, 607 F.2d 995 (2d Cir. 1979) (unpublished table decision). Accordingly, Howard cannot rely on incontestability as a defense to Beasley's infringement claim.

IV.

For the foregoing reasons, we will affirm in part the District Court's order to the extent it dismisses any claim that

---

Because Beasley only challenges the District Court's dismissal of his infringement claim, we do not consider whether claim preclusion applies to any right to cancellation of Howard's mark that Beasley asserted before the District Court, or to any other claims his pleadings may allege.

Howard defrauded the PTO, and will otherwise reverse and remand the order of the District Court.