**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2218
_____

TRANSPERFECT HOLDINGS LLC,
Appellant

v.

ROBERT PINCUS;
CREDIT SUISSE SECURITIES USA LLC
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:22-cv-01477)
District Judge: Hon. Jennifer L. Hall
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 7, 2025

Before: MATEY, FREEMAN, and ROTH, *Circuit Judges*

(Filed June 17, 2025)
_____

OPINION*
_____

_____

    *This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

TransPerfect Holdings LLC lodged securities fraud claims against a custodian and financial advisor for allegedly misleading statements. The District Court dismissed the complaint as time-barred and, finding no error, we will affirm.

## I.

Philip Shawe and Elizabeth Elting cofounded TransPerfect Global, Inc. (TPG). But the partnership soured, and in May 2014, Elting petitioned the Delaware Court of Chancery for the dissolution and forced sale of TPG. The Chancery Court appointed Robert Pincus as the Custodian to conduct the sale through an auction. Pincus hired Credit Suisse Securities (USA) LLC (Credit Suisse) to serve as TPG's financial advisor in connection with the sale.

On November 8, 2017, final bids were submitted by three prospective purchasers: H.I.G. Middle Market, LLC (H.I.G.), Blackstone Group L.P. (Blackstone), and TransPerfect Holdings LLC (Holdings), ninety-nine percent of which is owned by Shawe. The bids ranged in headline enterprise value from $700 million to $900 million, with H.I.G.'s bid including a $100 million promissory note. On November 10, Credit Suisse represented to Holdings's agent that its bid "was the 'low bid now.'" App. 42.

Pincus solicited revised final bids, and the companies submitted revised headline enterprise values of $925 million (H.I.G.), $740 million (Blackstone), and $710 million (Holdings) on November 15. In this round of bidding, H.I.G. increased its promissory note to $125 million. Electing to engage with Holdings to increase its bid, Pincus met with Shawe on November 16 and represented that he had received bids from third parties

2

with higher headline values for the Company but would pick Holdings if it increased its bid. Pincus explained that he had "bids that are higher than yours [Holdings], including one bid that is substantially higher." App. 43 (alteration in original). Holdings accordingly raised its bid to an enterprise value of $770 million, and a sale agreement was executed.

In presenting the agreement for the Chancery Court's approval, Pincus provided charts, prepared by Credit Suisse, outlining the November 15 bids and Holdings's final bid. The chart applied a ten percent discount to H.I.G.'s promissory note in calculating the enterprise value of the company's bid. The Chancery Court approved the sales agreement, and the Supreme Court of Delaware affirmed.

In 2021, as part of discovery in a separate case, Holdings discovered a November 22, 2017 email sent by H.I.G.'s financial advisor to its managing directors. Under the subject line "feedback from Pincus," the email advised that "Pincus gave zero credit for all conditional payments: seller note, escrow, holdbacks etc." and "Pincus viewed HIG's prior bid as being about $50 million lower than Shawe's." App. 41.

On November 9, 2022, Holdings sued Pincus and Credit Suisse for violating Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5(b). The case was assigned to Judge Richard G. Andrews. Defendants separately moved to dismiss, and Judge Andrews referred the motions to then-Magistrate Judge Jennifer L. Hall. Judge Hall issued a report recommending dismissal, to which Holdings objected. While the objections were pending, Judge Hall

3

was confirmed as a District Judge and the case was reassigned to her. Holdings then moved for reassignment of the case or Judge Hall's recusal.

Judge Hall denied the motion for reassignment or recusal. She explained that while Holdings "clearly takes issue with the conclusions set forth in the Report and Recommendation," recusal was not warranted because "a reasonable, well-informed observer would not question [her] impartiality." App. 9 n.4. Judge Hall also granted Defendants' motions to dismiss, concluding that the claims were barred by the statute of limitations. And while Holdings sought leave to amend in its reply brief, Judge Hall found that dismissal with prejudice was warranted because amendment would be futile. Holdings timely appealed, claiming: 1) the suit was not time-barred; 2) dismissal with prejudice was improper; and 3) the District Court erred in denying the motion for reassignment or recusal because Judge Hall had issued a report and recommendation on the motions to dismiss.[1]

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a district court's grant of a motion to dismiss, *Kalu v. Spaulding*, 113 F.4th 311, 324 (3d Cir. 2024), and "may affirm on any ground supported by the record," *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021). We will affirm "only if, 'accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not entitled to relief under any reasonable reading of the complaint.'" *Kalu*, 113 F.4th at 325 (quoting *McMullen v. Maple Shade Twp.*, 643 F.3d 96, 98 (3d Cir. 2011)). We review for abuse of discretion a district court's dismissal with prejudice, *United States ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 234 (3d Cir. 2013), but to the extent that discretion rests solely on the futility of an amendment to the complaint, we review de novo, *United States ex rel. Schumann v. Astrazeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). And we review for abuse of discretion denial of a motion for recusal. *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 336 n.25 (3d Cir. 2001).

## II.

Section 10(b) and Rule 10b-5 together "imply a private cause of action for securities fraud." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 679 (3d Cir. 2023). To recover damages, "a plaintiff must prove '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460–61 (2013)). Securities fraud claims are governed by "heightened pleading standards," which "share a common foundation with the ordinary pleading standards in that speculative or threadbare allegations along with legal conclusions are disregarded, and the remaining allegations are generally taken as true." *City of Warren Police & Fire Ret. Sys.*, 70 F.4th at 680. A claim "must include particularized allegations of fraud" and "contain more than 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Under the statute of limitations, a securities fraud claim must be filed "not later than the earlier of . . . (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b). "[A] fact is not deemed 'discovered' until a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint . . . with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." *Pension Tr. Fund for*

5

*Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 275 (3d Cir. 2013) (alteration in original) (quoting *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011)). Accordingly, Holdings had to have "discovered" the facts giving rise to its claims no earlier than November 9, 2020.

**A.**

Holdings contends that only with the February 2021 discovery could it satisfy the heightened pleading standard for its securities fraud claims. And because Holdings needed this information to overcome a motion to dismiss, it claims this action is timely. We disagree.

After the November 8 round of bidding, Credit Suisse represented to Holdings that it had "the 'low bid now.'" App. 42. But in its February 2018 order approving the sale agreement, the Chancery Court discussed a "bid analysis" of the November 8 bids prepared, in part, by Credit Suisse, showing the bid from Holdings "yielding the highest amount of after-tax net proceeds [to stockholders] and Blackstone's yielding the lowest." *In re TransPerfect Glob., Inc.*, Nos. 9700-CB, 10449-CB, 2018 WL 904160, at *11 (Del. Ch. Feb. 15, 2018).[2] Shawe said as much in an April 2018 filing urging the Supreme Court of Delaware to affirm the Chancery Court's approval of the sale: "[Pincus] . . . determined that Shawe's November 8, 2017 final offer was superior to H.I.G.'s (and

---

[2] We may take judicial notice of public documents "to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006).

Blackstone's) on *both* net proceeds and all key non-economic terms."[3] Appellee's Answering Brief, *Elting v. Shawe*, No. 90,2018, 2018 WL 2245981, at \*13 (Del. Apr. 5, 2018). Moreover, it is unclear how the February 2021 discovery could bolster the claim against Credit Suisse because the email in question does not mention Credit Suisse. Because Holdings failed to file suit within two years of discovering Credit Suisse's November 10 misrepresentation, this claim falls outside the statute of limitations.

The claim stemming from Pincus's November 16 statements is similarly barred. After receiving the November 15 bids, Pincus told Holdings that he had received higher bids, with "one bid that is substantially higher," App. 43. But Holdings knew that representation was false long before February 2021. In April 2018, Shawe told the Supreme Court of Delaware that "as of November 15, [his] offer remained far superior [to H.I.G.'s bid] on those key non-economic terms . . . and was very close on net proceeds." Appellee's Answering Brief, *Elting*, 2018 WL 2245981, at \*14. Because Holdings knew as early as April 2018 that Pincus's November 16 statements were false, its claim based on those statements is untimely.

Finally, any claims based on the bid charts are also time-barred. Holdings claims that only with the February 2021 email could it "show that the Bid Chart did not represent Defendants' good faith comparison and knowingly concealed Pincus's true valuation." Opening Br. 30. True, the bid charts only contained a minor discount for the promissory note. But Holdings already knew that promissory note could not be credited

---

[3] Although this statement was made by Shawe, Defendants point out, and Holdings does not contest, that it is imputed to Holdings.

towards the value of H.I.G.'s bid. In a January 2018 brief addressing Elting's opposition to the sale, Shawe told the Chancery Court that H.I.G. "knew the Custodian could not force the shareholders to accept" the promissory note, App. 163, because the Sale Order issued by the Chancery Court in July 2016 made clear that "the forms of consideration . . . shall be limited to cash and marketable securities, except as a stockholder may elect," *In re Transperfect Glob., Inc.*, Nos. 9700-CB, 10449-CB, 2016 WL 3949840, at *3 (Del. Ch. July 8, 2016). So while H.I.G.'s November 8 bid included "$800 million cash, plus a $100 million note, . . . HIG knew the Custodian could not force the shareholders to accept" the note "per the Sale Order." App. 163. That did not change when H.I.G. increased its bid to a $125 million promissory note. Holdings did not need the February 2021 discovery to provide it with a "specific evidentiary basis," Opening Br. 30, because, as Shawe explained in January 2018, under the Sale Order, this was an "unacceptable [promissory] note." App. 164.

Because the present suit is time-barred, the District Court properly granted the motions to dismiss.[4]

**B.**

Holdings contends that the District Court erred in dismissing the case with prejudice without granting leave to amend. While a "court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), it need not do so if amendment "would clearly be futile," because a "claim would not be able to overcome

---

[4] Having determined that the District Court did not err in dismissing the complaint based on the statute of limitations, we decline to consider alternative avenues for affirmance.

the statute of limitations." *Cowell v. Palmer Twp.*, 263 F.3d 286, 296 (3d Cir. 2001); *see In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). Because, as we explained above, these claims are barred by the statute of limitations, the District Court did not abuse its discretion in denying Holdings leave to amend and dismissing the complaint with prejudice.

Finally, Holdings argues the District Court erred in denying its motion for reassignment or recusal. A judge "shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). True, then-Magistrate Judge Hall issued a report recommending dismissal of the complaint before being reassigned to the case as a District Judge. But we have reviewed the merits of the District Court's decision de novo and found no error. "Any possible harm that may have been done by [Judge Hall's] decision not to recuse [herself] (and we do not suggest that any harm occurred) is thus ultimately eliminated by our own review." *Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 98 (3d Cir. 2013).

*        *        *

For these reasons, we will affirm the District Court's judgments.[5]

---

[5] Judge Roth concurs in the judgment and joins in the opinion except on the issue of recusal. From her experience as a District Judge and then as a Court of Appeals Judge reviewing District Court opinions, she appreciates that she was automatically recused from any case she had decided as a District Judge. This reflects her view that Judge Hall was required to recuse herself under 28 U.S.C. § 455(a), as it would be reasonable to question any judge's ability to impartially review his or her own report and recommendation. However, because this panel has thoroughly reviewed Judge Hall's opinions as a Magistrate Judge and as a District Judge, she is pleased in this case to affirm the judgment.

9